## UTAH FUEL CO. v. INDUSTRIAL COMMISSION OF UTAH et al.

No. 6809.   Decided June 13, 1945.   (159 P. 2d 877.)

See 71 C. J. S., Workmen's Compensation, sec. 929; 28 R. C. L. 801.

*H. J. Binch,* of Salt Lake City, for plaintiff.

*Shirley P. Jones,* of Salt Lake City, and *Grover A. Giles,* Atty. Gen., for defendants.

WADE, Justice.

This is a proceeding to review an award granted by the Industrial Commission to William Gerard for permanent and total disabilities and also for hospital and medical expenses incurred while out of the state of Utah. The Utah Fuel Company, the plaintiff herein, is a self-insurer.

On November 23, 1942, William Gerard was employed by the plaintiff as a hoistman at its coal mine in Sunnyside, Utah. While loading rock onto a car he was struck on the calf of his left leg by a rock which had bounced off the car. He continued to work for about an hour and a half until his shift ended and then because the pain in his leg began increasing he reported the accident to the foreman. In the course of a few days he was sent to a doctor in Salt Lake who hospitalized him. While in the hospital, Gerard filed a claim for compensation with the Industrial Commission but before a hearing was had he entered into a compromise agreement with the Utah Fuel Company and gave it a release in full settlement of all his claims. He also caused a written request to be filed with the commission asking it to dismiss his application which he had theretofore filed, whereupon the commission dismissed his application with prejudice. At the time this request was made and the compromise settlement entered into, both of Gerard's legs were in a serious condition and he knew that the left leg might have to be amputated. He was not satisfied with the treatment he was receiving in Salt Lake and desired to go to Kansas City,

Missouri, where his only son was living and where he was better acquainted with the doctors. Immediately upon the signing of the settlement and release the Utah Fuel Company had him transported on a stretcher to a train and paid a nurse to accompany him to Kansas City as he was in no condition to travel alone. Upon arrival in Kansas City he was placed in a hospital and within a few months had to submit to the amputation of both of his legs. He subsequently filed an application with the Industrial Commission of Utah for further compensation. It is the award granted by the commission on this application that we are asked to review.

It is plaintiff's contention that the Industrial Commission does not have jurisdiction to grant the award because at the time Gerard compromised and settled his claim with the plaintiff it was denying liability on the ground that no accident had occurred which arose out of or during the course of his employment and that if an accident did occur it was not the cause of the condition which necessitated the amputation of his legs.

We have carefully examined the record and find that there is sufficient competent evidence from which the commission could find, as it did, that an accident occurred during the course of Gerard's employment and that ■ this accident was the cause of the injury which aggravated a pre-existing disease and ultimately resulted in the loss of his legs.

The evidence introduced at the hearing before the commission disclosed that Gerard saw the rock fall and hit him on the calf of his left leg while he was hoisting rocks onto a company car, and that there was a bruise where the rock contacted his leg. Within fifteen minutes after he was hit his leg began to pain and the pain continued getting worse with the passage of time. After he reported the accident to his foreman he was given a slip to see a doctor. He saw someone at the mine who he thought was a doctor and who advised him to go home and bathe his legs in epsom salts.

The next day because the pain had not been alleviated he went to Price and saw the company doctor there. This doctor sent him to Salt Lake to see Dr. Allison and Dr. Allison had him hospitalized in Salt Lake. His condition was diagnosed as thrombosis, a clotting of the blood in the arteries or veins. This condition resulted in the shutting off of the blood supply to the limb.

Gerard at the time of the accident was 49 years of age. It is normal for a person's arteries to commence hardening at that age. A common cause of thrombosis is diseased arteries. However, Gerard, who had worked most of his life as a miner had never had any trouble with his legs until the time of the accident. The pain was localized at the spot where the rock hit and bruised him. There was medical testimony that a sudden blow, the impact of which would cause the artery to be pinched between the striking object and the bone, could cause thrombosis. Gerard's condition became progressively worse from the time of the accident and resulted eventually in the amputation of both of his legs. The evidence is sufficient to sustain the commission's conclusion that the injury was the result of the accident.

In *Barber Asphalt Corporation* v. *Industrial Commission et al.,* 103 Utah 371, 135 P. 2d 266, this court held that under the Utah Workmen's Compensation Act the Industrial Commission has continuing jurisdiction to grant additional awards even though payment had been made to an injured employee under an agreement for final settlement with the approval of the commission, if after the settlement there is a change in the condition of the employee. At the time Gerard entered into the compromise agreement and settlement with the plaintiff he knew that he might lose one leg, he did not know that he would lose both legs. The consideration for the settlement was $2,700 and medical expenses incurred. This amount is approximately what plaintiff would have had to pay Gerard for the loss of one leg under our Workmen's Compensation Act had the commission made an award at that time. After the settlement, Gerard's condition changed for the worse.

Under these circumstances the commission did not err in assuming jurisdiction and granting a further award in consonance with the changed condition and in conformity with our Workmen's Compensation Act.

Plaintiff further argues that the commission had no jurisdiction to compensate Gerard for hospital and medical expenses which he incurred while absent from the state of Utah because no written consent was obtained by him to leave the state and that therefore under the provisions of Sec. 42-1-86, U. C. A. 1943, the commission cannot grant compensation for the time in which he was absent from the state. Sec. 42-1-86, reads:

"An injured employee who desires to leave the locality in which he has been employed during the treatment of his injury, or to leave this state, shall report to his attending physician for examination, notifying the commission in writing of such intention to leave, * * *. Thereafter, and with the written consent of the commission, the employee may leave the locality in which he was employed; otherwise no compensation shall be allowed during such absence."

Gerard left the state with the permission of the plaintiff. He had been under the care of its physicians up until the moment of his leaving. In fact, plaintiff arranged for his trip. At the time he left the state he was under the influence of an opiate and was taken to the train on a stretcher and was accompanied to Kansas City by a nurse hired by plaintiff to take care of him. Before the agreement to settle was executed the plaintiff advised the commission that Gerard wished to leave the state and the commission told it there would be no objection to making the settlement if Gerard wished to leave the state. Under this state of the facts we are of the opinion that the provisions of Sec. 42-1-86 were sufficiently complied with by all the parties concerned so that the penalty provided for in that section for the leaving of the employee without the consent of the commission does not apply in the instant case.

True, a literal application of this section would require that the injured employee before he left the locality in which

he was employed must report to his attending physician for examination and also notify the commission in writing of his intention to leave and obtain the written consent of the commission to leave the locality or the state. Failing to both write and obtain the written consent of the commission to leave the locality or the state would immediately result in the loss of the right to compensation for the period in which he so absents himself. As is so aptly pointed out by counsel in defendants' brief, such a literal construction would result in many instances in the loss to the employee of his right to compensation because of the impossibility of performance of these provisions. For example, in many of our mining communities there is no doctor present in the locality in which the employee had been working when injured (in the instant case there was none) and oftentimes the nature of the injury is such that the injured employee is in no condition to go to anyone or to write to anyone and the employer finds it advisable to send the employee out of the locality in which he was working when injured so that adequate treatment may be had, yet a literal application of this section would make it mandatory for the commission to disallow compensation for the period of the employee's absence because he had failed to obtain the written permission of the commission to leave the locality. To so construe this section would be to abrogate the very objects and purposes of our Workmen's Compensation Act, which this court has stated many times is to place the burden of the support of industries' casualties on industry itself.

It is obvious that this section was enacted for the protection of the employer or its insurance carrier from fraudulent claims of employees as to the extent of injuries suffered by them. Such a law should be construed to effect its purpose, but at the same time it should not be so construed as to jeopardize the rights of the injured employee. In *Kirby* v. *Terminal Paper Bag Co.*, La App., 16 So. 2d 597, 599, a case in which the court was construing section of its Employers' Liability Act, which required that

an employee submit himself to examination by a doctor as soon after the accident as demanded and from time to time thereafter as may be reasonably necessary, and that refusal to so submit to any examination upon demand would suspend the right of compensation until the employee complied, it said with reference to the type of construction which should be put on such statutes:

"Laws of the character discussed should be and are strictly construed. While enacted primarily for the protection of the employer and to promote justice, yet, in enforcing same, the rights and conveniences of the injured employee should not be entirely overlooked. The law should be construed and enforced in a manner that will achieve its obvious purposes and at the same time inflict the minimum of hardship upon those it affects. In other words, it should be enforced rationally; that is, in conformity with the dictates of reason."

It is argued in the case of *Bell Sample Shoe Co. et al.* v. *Industrial Commission et al.*, 70 Utah 167, 259 P. 193, 55 A. L. R. 730, this court has held that it is mandatory that the written consent of the commission be obtained by the injured employee before absenting himself from the locality or the state and that a failure in this regard must result in the loss of compensation for the period in which he so absents himself.

We hold that the purpose of Sec. 42-1-86, U. C. A. 1943, is as stated in this opinion and that this can be best accomplished by interpreting the requirements therein to be directory and not mandatory so that the commission may use its discretion in each case to determine whether the purpose has been fulfilled, and in so far as *Bell Sample Shoe Co.* v. *Industrial Comm.*, supra, is in conflict with the holding expressed herein, it is hereby overruled.

The award of the commission is hereby affirmed.

McDONOUGH, TURNER, and WOLFE, JJ., concur.

LARSON, Chief Justice (concurring, dissenting).

I concur in the result arrived at by Mr. Justice WADE and in most of the rationale. But I do not deem it necessary

to give to Sec. 42-1-86, U. C. A. 1943, the application given by the opinion. I see no occasion for consideration of that section. Everything that was done in the way of removing the claimant from the state was the wilful, deliberate act of the plaintiff. It moved him physically, arranged his transportation, furnished the doctors who examined him, hired the nurse to accompany him, and shipped him out of the state (but not against his will) while under the influence of opiates. Under such conditions plaintiff is not in any position to invoke the provisions of the cited section of the statute. I think the wording of that section clearly implies that it is a restriction on the claimant to prevent him leaving the state or locality, to prevent the employer from keeping watch on his condition, and providing the necessary medical and hospital service; and then be met later with possible claims for medical and hospital bills and impairments not related to or growing out of the accident in course of employment. When the employer not only acquiesced in the leaving, but arranged it and paid for it, such employer cannot claim to have been damaged thereby. I think the cited section has no application in this case.