568 P.2d 500 (1977)
GRANITE CONSTRUCTION COMPANY, Employer, and Argonaut Insurance Company, Insurer, Petitioners,
v.
Jack K. LEONARD and Director of the Division of Labor and the Industrial Commission of the State of Colorado, Respondents.
No. 76-942.
Colorado Court of Appeals, Division III.
August 25, 1977.
*501 White & Steele, P.C., Michael W. Anderson, Denver, for insurer, petitioners.
Douglas R. Phillips, Denver, for respondent Jack K. Leonard.
J. D. MacFarlane, Atty. Gen., Jean E. Dubofsky, Deputy Atty. Gen., Edward G. Donovan, Sol. Gen., Bruce C. Bernstein, Sp. Asst. Atty. Gen., Denver, for respondents Director of the Division of Labor and The Industrial Commission of the State of Colorado.
RULAND, Judge.
Granite Construction Company and its insurance carrier, Argonaut Insurance Company, seek this review of an order of the Industrial Commission directing payment of certain medical expenses to the claimant, Jack K. Leonard. We affirm the order.
The facts material to this review are not in dispute. In 1954 claimant was involved in an automobile accident, suffering a severe fracture of his right ankle. Following surgical repair of the fracture by insertion of a nail, claimant resumed strenuous work activity as a logger and miner. However, an arthritic condition developed in the ankle.
In March of 1972, claimant sustained a sprained right ankle in the course of his employment with Granite. He was treated for this condition by a physician selected by Granite. A report of the accident was filed with the Commission by Granite, and subsequently a report was also filed by the treating physician, which indicated that claimant's pain was possibly due to a dislodging of the nail in his ankle by the sprain.
Surgery was performed in order to remove the nail and the physician filed a second report indicating that there should be no permanent disability and that claimant was able to resume his normal activities "pending further symptomatology." Argonaut filed a General Admission of Liability Form on April 20, 1972, agreeing to pay temporary disability and "for such permanent disability as may hereafter be determined to exist." The form was stamped by the Division of Labor as "approved . . subject to any further claim for liability as provided by law." Granite and Argonaut then filed a report on May 10, 1972, stating that claimant was "not sure as of yet" whether he had sustained any permanent disability. Thereafter Argonaut requested permission to close its file on June 15, 1972, and was advised by a supervisor of the Division of Labor that "this letter will authorize you to close your file on this claim."
On September 17, 1973, claimant injured his back in the course of his employment with Peter Kiewit Sons Co., and thereafter filed a claim with the Commission relating to that injury. He was placed under the care of the same physician who was originally authorized to treat him in conjunction with the March 1972 accident. At this time claimant was also experiencing substantial pain in the ankle. Following additional examination and diagnosis, that physician, on January 6, 1974, performed surgery to fuse the right ankle joint. However, because of *502 complications thereafter consisting of a bone infection, it was necessary for the physician to amputate claimant's right leg below the knee on September 12, 1974.
On January 27, 1975, claimant filed a petition to reopen the claim pertaining to his ankle, and the claimant's request was granted. Following hearings relative to both the ankle and back injuries, the referee entered findings of fact and conclusions determining, inter alia, that the medical expenses for treatment of the ankle condition were not the responsibility of Granite and Argonaut because there had been no prior notification to them of the subsequent treatment, and thus the referee concluded that that treatment was "unauthorized." Upon review by the Commission, it determined that the referee's order was erroneous in this regard, concluding that neither the failure of the treating physician to notify Granite and Argonaut of the subsequent treatment nor the authorization given Argonaut to close its file should be deemed to defeat claimant's right to medical benefits. The Commission therefore ordered the respondents to pay the medical expenses at issue here.
In seeking reversal of the Commission's order, Granite and Argonaut rely upon § 8-51-110, C.R.S.1973, which establishes an employer's right to receive reports from any physician selected by the employee to treat or examine him in connection with an injury. They contend that since Argonaut was originally authorized to close its file on the claim, and since claimant sought to obtain coverage under an accident and health policy for payment of the subsequent treatment to his ankle, with the result that reports relative thereto were sent by the treating physician to that carrier without notice to respondents, claimant must be deemed to have selected the treating physician without their consent or authorization. Not having received the medical reports or notice that additional treatment was being undertaken, they point out that they were precluded from offering additional or alternative physicians or courses of treatment. Hence, Argonaut and Granite urge that the subsequent treatment must be considered as the responsibility of claimant pursuant to such cases as State Compensation Insurance Fund v. Luna, 156 Colo. 106, 397 P.2d 231 (1964) and Baeza v. Remington Arms Co., 122 Colo. 510, 224 P.2d 223 (1950). These cases hold that an employer is not responsible for medical expenses incurred by the claimant for treatment by his physician where, as here, neither the Commission nor the employer received prior notice of the proposed treatment.
We do not view those cases as applicable here. In each of them, the claimant selected his own physician; while here, in contrast, claimant continued his treatment by the same physician to whom he was originally referred by Granite. Thus, the issue becomes whether claimant is foreclosed from medical benefits when he consults the employer's doctor for further treatment of the injury after the employer has been authorized to close its file pertaining to that claim.
The parties agree that the issue posed in this case is one of first impression in this jurisdiction. We must consider the solution to this problem "mindful that the Workmen's Compensation Act is to be liberally construed to effectuate its humanitarian purpose of assisting injured workers." James v. Irrigation Motor & Pump Co., 180 Colo. 195, 503 P.2d 1025 (1972).
Section 8-49-101(1)(a), C.R.S.1973, obligates the employer to furnish the necessary medical assistance for treatment of the claimant's injury both at the time of the injury "and thereafter during the disability." To that end, § 8-51-110(5), C.R.S. 1973, authorizes the employer to select the treating physician "in the first instance." And we do not view the stamp by the Division of Labor approving the employer's admission of liability "subject to any further liability as provided by law" as constituting a termination of claimant's right to payment for medical treatments by the employer's doctor. To the contrary, specific provision is made in the Act for obtaining final approval by the Commission of the settlement of a claim. See § 8-53-102(2), *503 C.R.S.1973. Also, in that regard, we do not consider written authority from the Division for the employer to close its file as equivalent to an order finally adjudicating the claim, see § 8-41-102, C.R.S.1973, especially since there was no request made of claimant to advise whether he agreed that his case was closed. Cf. James v. Irrigation Motor & Pump Co., Inc., supra. Accordingly, we conclude that claimant was authorized to continue his treatment by the physician to whom he was originally referred by Granite, and that the Commission's order awarding him medical benefits therefor was correct.
Order affirmed.
PIERCE and VanCISE, JJ., concur.