John J. PADILLA, Petitioner,

v.

INDUSTRIAL COMMISSION OF COLORADO, Charles McGrath, Director, Division of Labor, Department of Labor and Employment, State of Colorado; and Beatrice Foods Co., Inc., Respondents.

No. 83SC64.

Supreme Court of Colorado, En Banc.

Feb. 11, 1985.

Rehearing Denied March 11, 1985.

Carroll, Bradley & Froede, P.C., John S. Carroll, Joan W. Froede, Westminster, for petitioner.

L. Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Joel W. Cantrick, Sol. Gen., Patricia A. Blizzard, Mary Ann Whiteside, Asst. Attys. Gen., for respondents Industrial Commission and Charles McGrath.

DeMoulin, Anderson, Campbell & Laugesen, P.C., Robert L. McGahey, Jr., Kathleen M. Janski, Denver, for respondent Beatrice Foods Co., Inc.

Colorado Defense Lawyers Association, Craig C. Eley, Eley & Eley, Denver, amicus curiae.

KIRSHBAUM, Justice.

We granted certiorari to review the decision of the Colorado Court of Appeals in *Padilla v. Industrial Commission*, No. 82CA0562 (Colo.App. Jan. 20, 1983) (not selected for official publication), affirming the Industrial Commission's denial of a request by claimant, John J. Padilla, that his case requesting workers' compensation benefits be reopened. The Commission's final order adopted the ruling of a hearing officer that the case could not be reopened because Padilla had voluntarily waived his statutory right to reopen by executing a written settlement agreement of his initial claim. We reverse.[1]

---

1. The appellees have filed a motion for just damages and double costs, pursuant to C.A.R. 38. In view of our decision here, the motion is denied.

On August 7, 1978, Padilla injured his back while employed by Beatrice Foods Company (Beatrice), and was unable to return to work because of persistent back pain. On February 4, 1979, Beatrice, a self-insured employer, filed an admission of liability and began making temporary total disability payments to Padilla.[2] Padilla continued to experience pain, and a lumbar laminectomy was performed on his back in July of 1979.

On October 19, 1979, Beatrice and Padilla executed a "Stipulation for Settlement and Final Release of All Claims." The agreement provided that Padilla would accept $11,017.20, representing a seven and one-half percent permanent disability as a working unit, "in full settlement of this matter" and that Beatrice would pay any future medical expenses resulting from the accident "up to the statutory maximum of $20,000." The stipulation contains the following pertinent language:

> John J. Padilla, hereby releases and forever discharges Beatrice ... for any and all claims, demands, damages, actions, causes of action or claims of any kind or nature whatsoever, known and unknown, with the exception of future medical ... expenses arising from the accident of August 7, 1978, and coming within the statutory limit of $20,000 ... which have resulted or may in the future develop from the accidental injuries sustained by Mr. Padilla on August 7, 1978.

The agreement also states that its terms had been explained to Padilla by his attorney and that its provisions were fully understood and accepted "for the purpose of making a full and final compromise adjustment and settlement of any and all claims, disputed or otherwise, and for the express purpose of precluding forever any further additional claims arising out of the accidental injury of August 7, 1978."

The parties filed a motion with the Director of the Division of Labor, pursuant to the provisions of Rule XVII(13) of the Colorado Workmen's Compensation Rules of Procedure, for approval of the stipulation for settlement.[3] On October 22, 1979, the Director entered an order approving the settlement and dismissing the matter with prejudice as to the claims for temporary and permanent disability arising from the accident.

Padilla continued to experience pain in his back after October of 1979. Padilla's treating physician also concluded that osteoarthritis had developed in Padilla's left hip, and on December 1, 1980, further surgery was performed. On December 30, 1980, Padilla filed a "Petition to Reopen" with the Division of Labor, asserting that his physical condition had worsened.[4] On January 12, 1981, Beatrice filed a response to the petition to reopen, arguing that the petition should be denied because Padilla's condition had not worsened and because under the terms of the stipulated settlement agreement Padilla was precluded from reopening his claim.

On February 18, 1981, Padilla filed a "First Amended Petition to Reopen" which reiterated the allegation that Padilla's

---

2. The record does not reveal whether Padilla filed a claim for compensation.

3. Rule XVII(13) of the Workmen's Compensation Rules of Procedure provides:

> 13. SETTLEMENT PROCEDURES. The parties may make application for full and final settlement (and execute a final release of all claims in cases) by submitting to the Director the following:
> (a) A stipulation for Settlement and Final Release of all Claims. Such stipulation shall incorporate all terms of the settlement and shall be signed by all parties to the settlement and their respective attorneys. It shall contain the notarized signature of the claimant and provide a space for approval by the signature of the Director; and
> (b) A Motion for Approval of Settlement, signed by all parties or their respective attorneys; and
> (c) Form or Order to be signed by the Director.
>   Copies of all required documents shall be distributed to all interested parties and their attorneys.

4. The petition does not indicate under which statutory provision it was filed. However, the Division of Labor indicated on the Notice of Hearing that the petition to reopen was filed pursuant to § 8–53–119, 3 C.R.S. (1973).

physical condition had worsened, and alleged that the petition to reopen should be granted on the ground of mistake.[5] Appended to this amended petition were physicians' letters stating that Padilla's physical condition had worsened. Beatrice responded to the amended petition by referring to its previous statement of position.

On May 4, 1981, a hearing was held before a hearing officer for the Division of Labor. Padilla testified that his physical condition had deteriorated after he entered into the stipulation for settlement and that he had not been able to return to work since the accident.[6] He also testified that when he signed the settlement he understood that his condition would improve and that he would be able to return to the type of work he had performed prior to the accident. Under cross-examination, Padilla testified that the settlement "was just settling whatever damages had been made at the time and it was sort of a final thing" and that he understood he was giving up his right to any future benefits other than future medical expenses.

On January 19, 1982, the hearing officer entered an order denying the petition to reopen. The order stated that "the claimant may well have somewhat more back pain now than he had at the time he settled his claim" and that the stipulation "does not contain specific language concerning a waiver of the right to reopen." The order also contains the following pertinent language:

> [T]he only possible and logical way of interpreting the language in the settlement documents ... is that the claimant fully understood ... that he was waiving and forever foregoing a right to reopen for temporary total or any further compensation for permanent disability.

.  .  .  .  .

[T]here is no compelling reason to permit the claimant, who was an adult advised by competent counsel, to reopen this case where he has waived his right to do so.

.  .  .  .  .

[T]he claimant has not proved any mistake of any kind sufficient to permit the claimant to set aside this stipulation and release, and that any mistake in this case was unilateral on the part of the claimant.

Padilla petitioned for review, and the Commission affirmed, adopting the hearing officer's ruling. Padilla appealed the Commission's final order on two grounds: that the Commission erroneously construed the stipulation as a bar to a petition to reopen, and that the evidence before the hearing officer established a mistake about the severity of Padilla's injuries when the stipulation was executed. The Court of Appeals held that "the referee was correct in concluding that claimant's mistaken belief did not warrant setting aside the stipulation."

■ We granted Padilla's petition for certiorari to consider whether the provisions of the Workmen's Compensation Act (the Act) which authorize the reopening of awards are applicable to Padilla's settled claim. We conclude that under the Act claims resolved by settlement agreements remain subject to the reopening provisions of the statute in the same manner as claims resolved by the granting of an award, and that parties may not by private agreement modify this strong legislative policy.

■ The Workmen's Compensation Act represents the decision of our General Assembly to protect employees injured in the course of their employment from becoming wards of the public. *Industrial Commission v. London Guarantee & Accident*

---

5. Paragraph (4) of the first amended petition to reopen states:

> That at the time that the claimant approved the settlement of this case for 7½% as a working unit, he mistakenly believed that he could return to work. The claimant did not know that his medical condition would render him unemployable and totally disabled.

6. This testimony was essentially uncontroverted because Beatrice reserved cross-examination of the medical reports until a later hearing where the treating physicians would be present. This later hearing never occurred because Beatrice withdrew its request for a hearing on medical testimony.

*Co.,* 66 Colo. 575, 185 P. 344 (1919). It has long been recognized that, consistent with the beneficent purpose of the Act, its provisions are to be interpreted liberally in favor of the rights of injured workers. *James v. Irrigation Motor & Pump Co.,* 180 Colo. 195, 503 P.2d 1025 (1972); *Granite Construction Co. v. Leonard,* 40 Colo.App. 20, 568 P.2d 500 (1977). The light of this humanitarian purpose must illuminate the construction of the Act's provisions.

▪ Two separate sections of the Act address the issue of the reopening of an award. Section 8–51–108(2), 3 C.R.S. (1973), provides as follows:

> At any time, and from time to time, during the period for which compensation has been awarded for either permanent total or permanent partial disability, upon application of any party in interest, the director shall require such injured employee to be examined by one or more physicians, and, upon petition from any such interested party supported by a showing that the disability of such injured employee has undergone a change in degree since the entry of such award, the case shall be reopened, and the compensation previously awarded shall be modified, terminated, or continued as the evidence may require.

Section 8–53–119, 3 C.R.S. (1973),[7] contained the following pertinent language at the time Padilla filed his petition to reopen:

> Upon his own motion on the ground of error, mistake, or a change in condition, the director, at any time within six years from the date of accident in cases where no compensation has been paid, or at any time within two years after the date last payment becomes due and payable or within six years from the date of accident, whichever is longer, in cases where

compensation has been paid, and after notice of hearing to the parties interested, may review and reopen any award and, on such review, may make an award ending, diminishing, maintaining, or increasing compensation and any medical benefits previously awarded.... Any such order made by the director shall be subject to review by the commission.

Section 8–51–108(2) requires the Director to exercise authority under specified circumstances in cases in which an award of compensation previously has been made. Under its express terms, the Director has no discretion to reject a post-award application by any party for an examination by a physician or to refuse to reopen a closed case when a petition is filed showing that since the entry of the prior award the disability for which the award was granted has changed in degree. *See Byouk v. Industrial Commission,* 106 Colo. 430, 105 P.2d 1087 (1940). This provision protects all parties to compensation proceedings. An employer or an insurer, as well as an injured worker, is entitled to seek a change in the amount of benefits to be paid in the future for a particular disability in the event the disability has changed in degree since the entry of the initial award. The right under this statute, however, is exercisable only during such periods of time during which compensation is paid.

Section 8–53–119 vests the Director with discretion to reopen a case on the Director's own motion on the grounds specified and within the time limitations provided. Because the discretion to reopen cases under this provision is exercisable only by the Director, it is not material which party requests the exercise of such discretion, *Service Supply Co. v. Vallejos,* 169 Colo. 14, 452 P.2d 387 (1969), and the Director

---

**7.** Section 8–53–119, 3 C.R.S. (1973), was repealed and reenacted as § 8–53–113, 3 C.R.S. (1984 Supp.), which provides:

> At any time within six years from the date of injury or at any time within two years after the date the last compensation becomes due and payable, whichever is longer, the director or a hearing officer may, after notice to all parties, review and reopen any award on the

> ground of an error, a mistake, or a change in condition. If an award is reopened, compensation and medical benefits previously ordered may be ended, diminished, maintained, or increased. No such reopening shall affect the earlier award as to moneys already paid. Any order entered under this section shall be subject to review in the same manner as other orders.

may direct the reopening of a case under the provision without the benefit of a request by any party. *Colorado Fuel & Iron Corp. v. Industrial Commission,* 151 Colo. 18, 379 P.2d 153 (1962). Absent fraud or clear abuse of discretion, the Director's discretion is absolute, assuming the presence of one or more of the requisite factors and the exercise of that discretion within the applicable time period. *Hoover v. Industrial Commission,* 156 Colo. 147, 397 P.2d 223 (1964).

■ These two provisions indicate a strong legislative policy to the effect that in workers' compensation cases the goal of achieving a just result overrides the interest of litigants in achieving a final resolution of their dispute. *Travelers Insurance Co. v. Industrial Commission,* 646 P.2d 399 (Colo.App.1981). The broad language authorizing the reopening of "cases" indicates that the General Assembly was well aware that such administrative procedures would normally require a reexamination of claims previously resolved. Specifically, section 8–53–119 authorizes the Director to reopen cases where *no* compensation has been paid as well as cases in which compensation has been paid. This language further emphasizes the legislative determination that the interest of finality is of less significance than the interest of fair results.

It must first be observed that no great significance can be attributed to the use of the term "compensation." While some provisions of the Act suggest a legislative distinction between "compensation" and "benefits," *see, e.g.,* § 8–49–101, 3 C.R.S. (1984 Supp.) (discussing the requirement that employers must furnish certain medical treatment and supplies in terms of a requirement to furnish medical "benefits"), many provisions refer to these concepts interchangeably. *See, e.g.,* § 8–50–103, 3 C.R.S. (1984 Supp.) (dependents of a deceased entitled to "compensation or death benefits"); § 8–50–104, 3 C.R.S. (1973) (partial dependents may be eligible for a portion of death benefits, but in some circumstances not entitled to "compensa-

tion"); § 8–50–105, 3 C.R.S. (1973 & 1984 Supp.) (some dependents entitled to "compensation or benefits"); § 8–50–109, 3 C.R.S. (1984 Supp.) (compensation limited to reasonable funeral and burial "expenses" and, in some circumstances, medical "expenses"); § 8–50–111 and 112, 3 C.R.S. (1973 & 1984 Supp.) (defining when death proximately results from an injury or when death occurs other than as a proximate result of an injury in terms of benefits and compensation). This review of some of the provisions of the Act reveals that the terms "compensation" and "benefits" are employed with some inconsistency.

Section 8–53–119 also provides that, upon reopening, the Director may make an award ending, diminishing, maintaining, or increasing compensation and medical benefits "previously awarded." As in the case of the word "compensation," no great significance can be attributed to the legislative reference to the term "award." The term is not defined by the Act. However, section 8–41–102, 3 C.R.S. (1973), contains the following definition of the term "Order":

> Except as otherwise expressly provided in articles 40 to 54 of this title, "order" means and includes any decision, finding and award, direction, or other determination arrived at by the director or a referee of the division and any decision, classification, rate, rule, regulation, requirement, or standard of the commission.

We have construed the power of the Director granted by a predecessor version of this statute to encompass "authority to review the proceeding which resulted in the conclusion that compensation has been paid, whether it is designated an 'order,' 'decision,' 'judgment' or 'finding and award.'" *Brofman v. Industrial Commission,* 117 Colo. 248, 253, 186 P.2d 584, 587 (1947). Cases in which no compensation is paid may, therefore, be terminated by an "order" as well as by a "finding and award." It would at best be a strained reading of section 8–53–119 to suggest that by using the term "award" the General

Assembly has prohibited the Director from reopening any case closed by the entry of an order denying claims for benefits, expenses or compensation. Such an improbable consequence should be avoided in statutory construction. *City & County of Denver v. Holmes*, 156 Colo. 586, 400 P.2d 901 (1965). It is precisely this type of case in which the Director is authorized to take corrective action when warranted.

More compatible with the overall beneficent purposes of the Act, and particularly with the remedial authority conferred upon the Director by section 8-53-119, is the conclusion that the authority of the Director to reopen extends to all cases terminated by final agency action, whether such is accomplished by means of a document labeled an "order," a "finding and award," a "decision" or a "direction." *See Brofman v. Industrial Commission, supra; Independence Coffee & Spice Co. v. Taylor*, 97 Colo. 242, 48 P.2d 798 (1935); *London Guarantee & Accident Co. v. Sauer*, 92 Colo. 565, 22 P.2d 624 (1933). Thus, whether a "settlement" is the underlying basis for the entry of such agency document becomes less significant. The settlement itself does not conclude the case— rather, the Director's official approval of such settlement is required. *See* § 8-53-102(2), 3 C.R.S. (1973); [8] Rule XVII(13), Workmen's Compensation Rules of Procedure. Such order is no less subject to the Director's authority under section 8-53-119 than any other agency order.

Although the Workmen's Compensation Act contains no express recognition that cases in which claims are resolved by settlement are to be treated in the same manner as cases which are resolved by awards for purposes of the reopening provisions, several prior decisions of this court suggest that such conclusion must be implied from the policy and structure of the Act. First, in workers' compensation cases we have long recognized in varying contexts that, in general, the settlement of a claim is equivalent to an award. *See, e.g., Harlan v. Industrial Commission*, 167 Colo. 413, 447 P.2d 1009 (1968); *Colorado Fuel & Iron Corp. v. Industrial Commission*, 151 Colo. 18, 379 P.2d 153 (1963); *Brofman v. Industrial Commission, supra; Independence Coffee & Spice Co. v. Taylor, supra; London Guarantee & Accident Co. v. Sauer, supra.* Furthermore, in *University of Denver v. Industrial Commission*, 138 Colo. 505, 335 P.2d 292 (1959), wherein we concluded that the Commission could reopen a case under its independent authority within two years of the date a final periodic payment would have been due under the initial award rather than from the date the employee received a lump sum payment in satisfaction of the original award, we observed that "parties cannot by private contract abrogate statutory requirements or conditions affecting the public policy of the state." *Id.* at 509, 335 P.2d at 294. These cases recognize that the reopening provisions of the Act represent a strong public policy to the effect that any initial resolution of a compensation claim, however achieved, is subject to a timely decision by the Director to reopen the proceedings. In view of our prior cases, the beneficent purposes of the Act, and the very language of the reopening provisions, the conclusion is inescapable that the General Assembly has given the

---

**8.** Section 8-53-102(2), 3 C.R.S. (1973), was repealed and reenacted as § 8-53-105, 3 C.R.S. (1983 Supp.), which provided:

> No settlement or compromise shall be final unless in conformity with the provisions of articles 40 to 54 of this title and the rules of the commission and unless such settlement or compromise has been approved by the director or a hearing officer in writing.

Section 8-53-105, 3 C.R.S. (1983 Supp.), was also repealed and reenacted as § 8-53-105, 3 C.R.S. (1984 Supp.), which provides:

> An injured employee may settle all or part of this claim for compensation, benefits, penalties, or interest. Such a settlement shall be in writing and shall be signed by a representative of the employer or insurer and signed and sworn to by the injured employee. The settlement shall be reviewed in person with the injured employee and approved in writing by a hearing officer or the director of the division prior to the finalization of such settlement. The settlement shall be filed with the division as a part of the injured employee's permanent record.

Director authority to reopen a case within requisite time limitations regardless of the manner in which the case was resolved.

This conclusion is supported by decisions of courts in other jurisdictions which have concluded that settled workers' compensation claims may be reopened on the ground of changed circumstances. *See Swift & Co. v. Blades,* 502 S.W.2d 513 (Ky.1973); *Novak v. C.J. Grossenburg & Son,* 89 S.D. 308, 232 N.W.2d 463 (1975); *Utah Fuel Co. v. Industrial Commission,* 108 Utah 346, 159 P.2d 877 (1945); *see also* A. Larson, 3 *The Law of Workmen's Compensation* § 82.41 (1983). These decisions adopt various rationales, reflecting the diversity of the statutory provisions which have been adopted in other jurisdictions. Of course, other courts also articulating various rationales and construing disparate statutory provisions have reached contrary conclusions. *See City of Anaheim v. Workers' Compensation Appeals Board,* 128 Cal. App.3d 200, 180 Cal.Rptr. 132 (1982); *Greenwade v. State Accident Insurance Fund,* 41 Or.App. 697, 598 P.2d 1265 (1979); *Luersen v. Transamerica Insurance Co.,* 550 S.W.2d 171 (Tex.Civ.App. 1977). The purposes, structure and language of our Act persuades us that the policy of permitting claims to be reopened by the Director extends to cases resolved by settlement as well as to cases resolved by administrative determination.

■ Respondents emphasize the uncontroverted fact that the settlement agreement was submitted to and approved by the Director in full compliance with rules promulgated by the Commission governing the procedure for effecting "final" settlements of claims. The Workmen's Compensation Act refers to the settlement of cases in section 8–53–102(2), 3 C.R.S. (1973),[9]

which at the time here relevant provided in pertinent part as follows:

> No receipt or settlement shall be final unless in conformity with the provisions of articles 40 to 54 of this title and the rules and regulations of the commission or until such receipt or settlement has been approved by the director.

Rule XVII(13) of the Workmen's Compensation Rules of Procedure establishes the procedure by which parties may request a "full and final settlement." The rule requires the submission to the Director of certain documents, including a "stipulation for Settlement and Final Release of all Claims."[10] However, the claimant's use of the procedure provided for effectuating settlements of claims does not constitute evidence or authority for the argument that the settlement is not to be treated as an award for purposes of the reopening statute. As previously indicated, the Director's authority to reopen is not dependent upon the means of resolution of an initial claim. Moreover, the finality of the receipt or settlement referred to in the statute has no greater effect than the finality of an award achieved after administrative resolution of a claim when viewed from the perspective of the overriding beneficent policy of the Act to ensure that claims of injured workers are fairly resolved. As previously recognized by this court, a "final" award in the context of a workers' compensation claim means only that the matter has been concluded unless reopened. *Colorado Fuel & Iron Corp. v. Industrial Commission, supra; Graden Coal Co. v. Yturralde,* 137 Colo. 527, 328 P.2d 105 (1958).

The hearing officer found "no compelling reason" to permit Padilla to reopen this case in view of the waiver provisions of the settlement agreement. We have demonstrated that the very purposes of the Act

---

9. *See* note 8, *supra.*

10. No party challenges the validity of the settlement, *per se,* and the hearing officer specifically found:

> [T]he settlement documents used in this case and approved by Referee Dye were in compliance with all statutory provisions of the

Workmen's Compensation Act concerning settlement and were in compliance with the Workmen's Compensation Rules of Procedure concerning settlement, and that the settlement itself was concluded in a manner consistent with the statute and rules relating to settlement.

and the policy expressed by its reopening provisions are ample reason to permit the reopening of this case. We have also recognized that, as with any other statutorily created right, the parties cannot by private agreement prevent the Director from exercising the authority to reopen a settled case. *See University of Denver v. Industrial Commission, supra.* To the extent this agreement purports to abrogate that authority, it is unenforceable.

■ The decision of whether to reopen a case on the grounds of changed conditions under section 8–53–119, 3 C.R.S. (1973), is a decision committed to the discretion of the Director. The hearing officer here, acting on behalf of the Director,[11] erroneously concluded that the terms of the settlement agreement prohibited further consideration of Padilla's claim. Our conclusion that the agreement does not prevent the reopening of this case does not, however, require such reopening; that decision remains committed to the Director's discretion.

The judgment of the Court of Appeals is reversed, and the cause is remanded to that court with directions that it remand the cause to the Commission with directions to remand to the Director for a determination of whether the case shall be reopened because of change in condition.

ROVIRA, Justice, dissenting:

The court's opinion is, I think, constructed on a faulty premise which undermines the validity of its conclusion.

Sections 8–51–108(2) and 8–53–119, 3 C.R.S. (1973), authorize reopening of a case where an award has been made. Section 8–51–108(2) authorizes an interested party to initiate the reopening of a case where there is a showing that the disability of the injured employee has undergone a change in condition since the entry of an *award.* Section 8–53–119 permits the director to reopen any *award* on his own motion on the ground of error, mistake, or change in condition.

In its analysis of section 8–51–108(2), the court correctly notes that reopening is conditioned upon there being an award. Maj. Op. 277. However, in its analysis of section 8–53–119, it incorrectly concludes that the statutory provision "vests the Director with discretion to reopen a case on the Director's own motion...." Maj. Op. 277.

My reading of section 119 does not comport with that of the majority opinion. Simply stated, section 119 allows the Director, for certain reasons and within specified periods of time, whether or not compensation has been paid, to "review and reopen any award." Authority to reopen an *award* is not authority to reopen a case where no adjudication has ever taken place. A review of the Workmen's Compensation Act and its history demonstrates that the legislature provided that disputes could be resolved either through settlement agreements or adjudication. After providing for these two routes of resolution, however, the legislature only provided the director with authority to reopen in cases where an award was made.

The General Assembly has, by the adoption of section 8–53–102(2), 3 C.R.S. (1973), evidenced its approval of settlement of cases under certain conditions.[1] That section provides, in part: "No receipt or settlement shall be final unless in conformity

**11.** Padilla filed the petition to reopen with the "Department of Labor and Employment, Division of Labor, Workmen's Compensation Section, State of Colorado." The Division of Labor, through an Administrative Officer II, responded to letters written by the attorneys regarding this petition. The docket clerk of the Workmen's Compensation Section filed the several Notices of Hearing, and a "Hearing Officer" conducted the hearing on the petition. Thus, although it is not entirely clear, it can be assumed that the hearing officer was authorized by the Director

to conduct the hearing pursuant to § 8–53–105, 3 C.R.S. (1973).

**1.** Legislative approval of settlements in workmen's compensation cases is evidenced by the fact that settlement provisions have existed since the enactment of the Workmen's Compensation Act in 1919. Ch. 210, sec. 93, 1919 Colo. Sess.Laws 739. Section 8–53–105, 3 C.R.S. (1984 Supp.) also supports the view that settlements made in accordance with the statute are viewed with favor.

with the provisions of articles 40 to 54 of this title and the rules and regulations of the commission or until such receipt or settlement has been approved by the director."

In my view, settlement of disputed issues of liability and extent of injury not only serve a useful and beneficial purpose for the claimant, the employer, and the employer's insurance carrier, but also allow efficient use of public resources.

The court's opinion, which treats awards and statutorily authorized settlements as being one and the same for purposes of reopening, is not based on sound statutory analysis or good public policy. It ignores not only the statutory authorization of settlements, but also the benefit of settlements, fairly arrived at, as an alternative to litigation.

Accordingly, I respectfully dissent.

I am authorized to say that Chief Justice ERICKSON joins me in the dissent.