PATTERSON v. GAGE ET AL.

1. The term "hotel bill," when used in a contract guarantying payment of such a bill, includes board and lodging,—items which every common innkeeper is bound to furnish each guest,— but excludes billiards, cigars and liquors.

2. Defendant signed and delivered the following guaranty: "I will be responsible for the hotel bill of H., and will see it paid within twenty days." *Held,* this bound defendant for the debt of H. as it stood at that date, but for nothing furnished after delivery of such guaranty.

3. The rule that the words of a contract are to be construed most strongly against the party using them is the last rule to be resorted to. and never to be applied except when other rules of interpretation fail.

*Appeal from Superior Court of the City of Denver.*

SEPTEMBER 20, 1882, Hamm began boarding at Gage's hotel, and seven days thereafter delivered to him a guaranty signed by Patterson, and in the following words: "I will be responsible for the hotel bill of J. W. Hamm, and will see it paid within twenty days." Hamm remained at said hotel fourteen days, running a bill of $49 for board and lodging; also a bar bill of $23.25. Gage sued Patterson on this guaranty, claiming $72.25. Patterson defended, contending that he was in no event liable for the bar bill, but only for the board and lodging, and not even for any part of that furnished subsequent to said guaranty. Judgment for Gage, and Patterson appeals.

Messrs. MARKHAM and THOMAS, for appellant.

Messrs. ALLEN and FERGUSON, for appellee.

RISING, C.   This action was brought by D. A. Gage & Co. against T. M. Patterson to recover the sum of $72.25. The evidence shows that the plaintiffs were proprietors of the St. James hotel, in the city of Denver, in September, 1882; that on the 20th day of September J. W. Hamm commenced running a bill at said hotel; that on the 27th day of September the defendant, at the request of Hamm, gave to him a writing, which is as follows:

"DENVER, COLORADO, September 27, 1882.

"*David Gage, Esq.*— DEAR SIR: I will be responsible for the hotel bill of J. W. Hamm, Esq., and will see it paid within twenty days.          T. M. PATTERSON."

That said writing was delivered to the plaintiffs; that Hamm remained at said hotel until after dinner on the

4th day of October; that a month or two after Hamm left the plaintiffs presented to defendant for payment the following account:

*Mr. J. W. Hamm to St. James Hotel, Dr.*

| | |
|---|---|
| September 20th.   To board to October 4th, A. D. | $42 00 |
| Extra meals, $5.00; extra lodging, $2.00 | 7 00 |
| To bar, 2.70, 50, 1.55, 4.50, 2.50, 75, 65, 60, 2.30, 75, 1.45, 3.10 | 23 25 |
| | $72 25 |

That when the account was presented to the defendant he offered to pay the board bill, but refused to pay the bar bill.   Upon a trial to the court judgment was rendered against the defendant for the sum of $65.25.

The question presented for our consideration is, What is the extent of the liability of the appellant upon his written undertaking to pay the hotel bill of J. W. Hamm? And in the consideration of this question we are to inquire whether the words "hotel bill," as used in said undertaking, shall be held to include the bar bill; and also whether, under the terms of said undertaking, appellant shall be held liable for the full amount of Hamm's hotel bill or only for a portion of it.   That a person keeping a house for the entertainment of travelers, with board and lodging, is an hotel keeper, and that, as such hotel keeper, he is under an obligation to furnish his guests with board and lodging, is well settled in this country.   It is clear that such articles as an hotel keeper is under obligation to furnish his guest with, upon request, are proper items to be included in the general term "hotel bill."   This is so because the term "hotel bill" would then be generally applicable.   But if the term is extended so as to include items which the hotel keeper is not obligated to furnish, but which he does furnish, as a matter of convenience, to his guests, then it can have no general and common meaning, but the hotel bill of one hotel keeper might include board and lodging only, that of another might include board, lodging and liquors, and still another might include board, lodging, liquors, cigars and billiards; and

this list of articles might be continued so that such bill could be made to include all articles that the guest might order that are kept for sale by the proprietor of the hotel. It is obvious that the term "hotel bill," as used in the undertaking of appellant, must be held to mean what the words mean as used in their general, common and usual sense.     2 Pars. Cont. 500.

These words, used in their general and comprehensive sense, should be held to include as proper charges in a hotel bill only such items as would make the term properly applicable to all hotels; and this would confine the items of charges in such bill to such articles as an hotel keeper, by reason of his being an hotel keeper, is bound to furnish his guests upon request.   An hotel keeper is not bound to furnish his guests with liquors, cigars or billiards; and therefore the including of such articles in an hotel bill would not be expected or anticipated by one contracting to pay the hotel bill of another.   To illustrate: If an attorney, living in Leadville, contract with a client to go to Denver upon business for the client, the attorney to be paid for his services at a stipulated price per day, and such further sums as the attorney should pay out for railroad fare and hotel bills while engaged in such service, could the client be compelled to pay for the wines, liquors and cigars furnished the attorney by the keepers of the hotels where the attorney stopped?   We do not think the words of the contract could be so construed as to make the contract say that it was the intention of the client to bind himself to the payment for such articles without doing violence to the rule that requires that the language of a contract will be understood in the ordinary, popular sense, unless it relates to some technical subject.   Bish. Cont. § 590.   The fact that it may be customary, upon the request of a guest, to charge such articles in his bill, instead of requiring him to pay for the same when and where obtained, does not constitute such items a part of his *hotel bill* proper in the legal accepta-

tion of that term. "No usage is admissible to influence the construction of a contract, unless it appears that it is so well settled, so uniformly acted upon and so long continued as to raise a fair presumption that it was known to both contracting parties and that they contracted in reference to it. There must be some proof that the contract had reference to it, or proof arising out of the position of the parties, their knowledge of the course of business, their knowledge of the usage, or other circumstances from which it may be inferred or presumed that they had reference to it." *Walls v. Bailey*, 49 N. Y. 464–474; *Press Co. v. Stanard*, 44 Mo. 71–82.

We do not understand that there is any such thing as a board bill at an hotel as distinct from an hotel bill. It appears from the evidence that the plaintiffs advertised the rates at their hotel to be "from $2.50 to $3.00 per day, according to location." Rates for what? But one intelligent answer can be given to this question; and that is, rates for hotel accommodations. The account against Mr. Hamm shows that he was charged $42 for fourteen days' board. This would be $3 per day for board. But it is evident that this charge was intended to cover lodging and all the ordinary and usual accommodations of the hotel as well as board. The intention of the defendant must be held to have been to bind himself for the payment of such accommodations as are ordinarily furnished guests at an hotel, and therefore he cannot be held liable for the bar bill of Hamm, by the terms of his undertaking; and the evidence is insufficient to hold him liable upon any usage or custom affecting the matter of his undertaking.

We now come to the consideration of the question whether the defendant, under the terms of his undertaking, can be held liable for the full amount of Hamm's hotel bill. It is contended by counsel for appellant that appellant only became responsible to appellees for the amount of Hamm's hotel bill as it stood at the date of the

undertaking, while counsel for appellees contend that appellant became responsible to appellees for said hotel bill for all the time he was a guest at their hotel upon that particular visit. The evidence shows that said hotel bill commenced on September 20 and ended October 4, 1884. and that defendant's undertaking is dated September 27, 1882. From these facts, and the wording of the undertaking, and the arguments of counsel, three questions affecting the liability of the defendant arise: (1) Did the defendant undertake to become responsible solely for Hamm's hotel bill owing to the plaintiffs at the date of the undertaking? (2) Did the defendant undertake to become responsible solely for the hotel bill that Hamm should run at plaintiffs' hotel after the date of said undertaking? (3) Did the defendant undertake to become responsible for Hamm's hotel bill upon that particular visit, including the bill owing at the date of said undertaking, and the bill that might be run thereafter? An affirmative answer to either one of these questions is equivalent to a negative answer to the others. The undertaking of the appellant is a guaranty by him of the payment of Hamm's hotel bill within twenty days. The words "within twenty days," taken alone, do not definitely fix the time of payment, and the time when such payment is to be made must be ascertained by a consideration of the whole instrument. The payment of the hotel bill, by the terms of the guaranty, is to be made within twenty days, and there is no portion of the contract to which the words " twenty days " can relate as aiding to make them more definite and certain in fixing the time of payment, except the date of the instrument; and from this it seems clear that, by the terms of the instrument, the undertaking of appellant is that he will see that the hotel bill then owing by Hamm to the plaintiffs is paid within twenty days from the date of such undertaking.

It is contended by counsel for appellees that the words

of a contract are to be taken most strongly against the party using them. This is a correct statement of one of the rules adopted for the interpretation of written instruments, but it is the last rule to be resorted to, and never to be applied except when other rules of interpretation fail. *White v. Reed,* 15 Conn. 457, 466; *Adams v. Warner,* 23 Vt. 411; 2 Pars. Cont. 507. The rule invoked by counsel for appellees cannot be applied in this case, for the reason that the meaning of the instrument can be otherwise ascertained. There is nothing in the contract tending to show that the liability of appellant should extend beyond the payment of the hotel bill owing by Hamm to the plaintiffs at the time the guaranty was made, and therefore there is no uncertainty created by its terms.

It follows, from these views, that the court erred in rendering judgment againt the defendant for the sum of $65.25. The judgment should be reversed and a new trial ordered.

We concur: STALLCUP, C.; DE FRANCE, C.

PER CURIAM. For the reasons assigned in the foregoing opinion the judgment is reversed and the cause remanded.

*Reversed.*