QUAD CONSTRUCTION, INC., a Wyoming Corporation, Plaintiff-Appellee,

v.

WM. A. SMITH CONTRACTING CO., INC., a Missouri Corporation, Defendant-Appellant.

Nos. 75–1260, 75–1261.

United States Court of Appeals, Tenth Circuit.

Argued Jan. 26, 1976.

Decided April 22, 1976.

Richard L. Harring, Denver, Colo. (Calkins, Kramer, Grimshaw & Harring, and James S. Bailey, Denver, Colo., on brief), for defendant-appellant.

Joseph E. Meyer III, of Holme, Roberts & Owen, Denver, Colo., for plaintiff-appellee.

Before LEWIS, Chief Judge, and BREITENSTEIN and McWILLIAMS, Circuit Judges.

BREITENSTEIN, Circuit Judge.

This is a contract case with jurisdiction based on diversity. The district court gave judgment for the plaintiff and each side has appealed. We affirm.

Plaintiff Quad Construction, Inc., and defendant Wm. A. Smith Contracting Co. were joint venturers on two tunnel projects located in Colorado. The joint venture was the prime contractor for the cities of Colorado Springs and Aurora on the Homestake Tunnel. On the Divide Tunnel project of the United States Bureau of Reclamation the prime contractor was Winston, Foley, Frazier-Davis & Hurley and the Smith-Quad joint venture was a subcontractor. Difficulties were encountered and various lawsuits were brought.

Differences between Quad and Smith were settled by an agreement executed on August 5, 1969. Quad pulled out of the projects and Smith concluded them. In consideration for Quad's withdrawal, releases, and other commitments, Smith paid Quad $450,000 and in addition agreed to pay Quad 10% of the "net claims," against the prime contractor or the Bureau, of the joint venture on the Divide project or 10% of the net profit of the joint venture before taxes, whichever is greater. The controversy centers around the meaning of "net claims." There was no net profit.

On the Divide project unexpected subsurface conditions and other unforeseen problems substantially increased the construc-

tion costs. Smith-Quad demanded additional compensation. In turn Winston, the prime contractor, demanded that the Bureau pay several million dollars more than the contract amount. The dispute between Winston and the Bureau was pending and unresolved at the time of the 1969 agreement between Smith and Quad. After it was settled Winston paid Smith $3,099,281. Smith refused to pay any of this amount to Quad. Quad then brought the instant suit. After trial the district court made findings and deducted $522,000 from the amount paid by Winston to Smith. The propriety of this deduction is not questioned. The court then gave Quad judgment for 10% of the remainder or $257,728 plus interest and costs. In so doing the court rejected the Quad contention that it was entitled to payment for four items to be mentioned later.

No. 75–1260 is an appeal by Smith from the judgment against it. Smith says that the construction costs exceed the receipts from the Bureau and, hence, there are no "net claims." Quad says that construction costs are not deductible from "net claims."

Paragraph 3 of the contract provides that Smith shall pay Quad $450,000 and

"in addition thereto Smith hereby agrees to pay to Quad, when finally determinable and within thirty (30) days after Smith has received full payment of all monies due under the Divide Tunnel and Appurtenant Structures Project, ten percent (10%) of the net claims of the joint venture, Smith-Quad, against the prime contractor * * * and/or the Bureau of Reclamation * * * as owner, * * * or ten percent (10%) of the net profits, before taxes derived by the joint venture, * * * whichever is greater, subject, however to the definition or determination of 'net claims' or 'net profit before taxes' as hereinafter is set forth.

The definition or determination of "net claims" is found in ¶ 4. Subparagraph A says that "net claims" shall not include any back charges by either the prime contractor or the Bureau against Smith-Quad and by illustration explains the meaning. Subparagraph B says that "net claims" shall not include any claims by Smith-Quad against the prime contractor or the Bureau "for cement used in the overbreak area." Subparagraph C provides that "net claims" does not include costs incurred by Smith in processing the claims but limits the liability of Quad for those costs. Nothing is said in ¶ 4A about the deductibility of construction costs from the Quad percentage of the "net claims."

The phrase "net profit before taxes" is defined by ¶ 5 to mean the net profit for all work performed by the joint venture on the Divide Tunnel "as determined by a final audit of certified public accountants based on standard accounting principles" taking stated factors into account. It is undisputed that there was no "net profit before taxes."

■ The trial court held that "net claims" has no accepted or understood meaning in the construction industry and that the term "has to mean gross claims less those amounts, if any, set forth in paragraphs 4–A, B and C of the agreement." We agree.

■ The records show that the term "net claims" is not a term of art in the construction business and has no common or accepted meaning in that industry. Smith argues that the court erred in not applying "generally accepted accounting principles" to the definition of "net claims." The only contract reference to accounting principles is found in the definition of "net profits" and we are not concerned therewith because there were none. Smith complains of the court's rejection of the testimony of its witness Williams as to the meaning of "net claims" in accounting practices. Our concern is with the construction business, not accounting practices. Before the court's ruling the witness had testified that until this case came up he had never heard the term "net claims" used in the construction business. The rejection of the testimony was proper.

The court found that the contract was prepared by Smith's attorney. Smith objects on the ground that the contract was jointly worked out and gone over by the attorneys for the respective parties. The court noted that Smith's attorney resided in Denver and did not testify in the case. Smith insists that this fact does not justify an inference against it because the attorney was equally available to each side. The same situation pertains to the attorney for Quad. He resides in Denver and was not called as a witness.

■ We recognize the applicable Colorado decision in *Patterson v. Gage*, 11 Colo. 50, 16 P. 560, 562, stating the rule that words of a contract are to be taken most strongly against the party using them "is the last rule to be resorted to, and never to be applied except when other rules of interpretation fail." We accept the rule that where a potential witness is equally available to all parties, no inference should be drawn from any failure to call that witness. See *Kean v. Commissioner of Internal Revenue*, 9 Cir., 469 F.2d 1183, 1187.

The mentioned rules have no applicability to the case before us. Although the trial court commented on the preparation of the contract by Smith's attorney and the availability, but non-appearance, of that attorney as a witness, its decision was not based on either contract preparation or non-appearance. In our determination of the controversy we ignore these aspects of the case.

The claims to which the contract refers are those against the prime contractor and the Bureau on the Divide Tunnel project. The dispute arises over the word "net." The contract refers "to the definition or determination of 'net claims' or 'net profit before taxes' as hereinafter is set forth." Paragraph 4 specifically provides that "net claims" shall not include specified items. Construction costs are not included therein. The ¶ 5 definition of "net profit" specifically refers to "standard accounting principles." The omission of reference to "standard accounting principles" in the definition of "net claims" is significant. The parties recognized the desirability of defining "net claims" and did so by providing for specific exclusions. These did not include construction costs. Under the contract, construction costs are pertinent to "profit" but not "claims."

■ The contract must be construed to effectuate the manifest intent of the parties. *Tenneco Oil Company v. Gaffney*, 10 Cir., 369 F.2d 306, 308, and *Cox v. Pearl Investment Company*, 168 Colo. 67, 450 P.2d 60, 63. The courts interpret contracts as made by the parties and do not make new ones for them. *Yamin v. Levine*, 120 Colo. 35, 206 P.2d 596, 597. In the instant case the parties defined the term in question and did not exclude construction costs. We agree with the trial court that only the specified exclusions are deductible from the settlement which Smith received for the claims.

Paragraph 3 of the contract provides that payment to Quad shall be made "within thirty (30) days after Smith has received full payment of all monies due under the Divide Tunnel and Appurtenant Structures Project." The 30 days expired on January 19, 1973, and Smith did not pay Quad. The February 3, 1975, judgment of the district court included $31,435 as "interest at the rate of 6% per annum from January 19, 1973." Smith asserts that this allowance of prejudgment interest is contrary to Colorado law.

■ In federal court diversity jurisdiction contract cases, interest questions are determined by state law. *Rocky Mountain Tool & Machine Co. v. Tecon Corp.*, 10 Cir., 371 F.2d 589, 596. With judicially created exceptions, not here presented, the allowance of interest in Colorado is a creature of statute. Where there is no agreement therefor, its allowance is regulated by C.R. S.1973, § 5–12–102, which provides:

"Creditors shall be allowed to receive interest * * * for all moneys after they become due, on any bill, * * * or other instrument of writing, * * *; also * * * on money due on account

from the date when the same became due."

■ The contract before us is within the statute. The Colorado Supreme Court has construed "other instrument of writing" to include "one based on contractual relations; an instrument importing mutuality; one which implies an obligation to pay for a consideration rendered." *Cobb v. Stratton's Estate*, 56 Colo. 278, 138 P. 35, 38–39. We have held that the Colorado statute permits allowance of interest from the time that money is due under a contract. *Warde v. Davis*, 10 Cir., 494 F.2d 655, 659.

Smith contends that the amount due is unliquidated and, hence, the Colorado statute does not permit the award of prejudgment interest. The 30-day payment provision of the contract provides "when finally determinable and within thirty (30) days after Smith has received full payment of all monies due." The fact that Smith received less than it demanded is immaterial. Smith made a voluntary settlement of its claim and no question is raised as to the fairness and propriety of that settlement.

From the total amount received by Smith, ¶ 4A of the contract requires the deduction of back charges made by the Bureau. Judgment was given for the difference. The record shows that the deduction was readily ascertainable. The amount thereof is not in contest. The use of the word "and" between "finally determinable" and the 30-day provision shows that the parties recognized the necessity of computing the exclusions provided in ¶ 4. Nothing in the contract indicates that the final determination could be indefinitely extended.

■ The dispute which culminated in the instant lawsuit does not make the amount unliquidated. Colorado has held that a debtor cannot avoid the payment of interest by disputing an account and that when the account, or any portion thereof is found due, the creditor is entitled to interest on the amount due. *Florence & Cripple Creek Railroad Co. v. Tennant*, 32 Colo. 71, 75 P. 410, 411. See also *York Plumbing and Heating Co. v. Groussman Investment Co.*, 166 Colo. 382, 443 P.2d 986, 987. We have reached the same conclusion in a case involving the Colorado statute. *North Drive-in Theatre Corp. v. Park-In Theatres*, 10 Cir., 248 F.2d 232, 237. The award of prejudgment interest was proper.

No. 75–1261 is an appeal by Quad from the rejection of four items which Quad says are claims within the meaning of the August 5, 1969, contract. The court denied recovery on all amounts paid to Smith before the settlement and on the remaining items held that the Quad proof was insufficient. Quad asserts that the evidence sustains its position with regard to amounts paid after the contract date.

■ The evidence regarding the amounts in dispute is not satisfactory. The testimony of Quad's witness Arthur may reasonably be taken to mean that any payment before March 1972 was not within the settlement agreement. Witness Huncke, an officer of Smith, testified that the reference in settlement agreement to "claims" was to the amount which Smith would receive from its controversy with the prime contractor and the Bureau less the deductions provided in the contract. A reasonable inference from his statement is that all "claims" were within the settlement and that the dispute was over the word "net." We are bound by the reasonable inferences drawn by the trier of the facts. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680, 704. The findings of the court are to be given the same force and effect as a jury verdict. *Stoody Co. v. Royer*, 10 Cir., 374 F.2d 672, 681. We do not decide factual issues de novo. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 123, 89 S.Ct. 1562, 1576–77, 23 L.Ed.2d 129, 148. Nor can it be said as a matter of law that the claims were not included in the settlement. The action of the trial court was not clearly erroneous. See *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 541–42, 92 L.Ed. 746, 765–66.

In both No. 75–1260 and No. 75–1261 the judgment is affirmed. Each party shall bear its own costs in the court of appeals.