Brent MOLAND, Petitioner
and Cross–Appellee,

v.

INDUSTRIAL CLAIM APPEALS OFFICE OF the STATE of Colorado and Subsequent Injury Fund, Respondents,

and

Roadway Package System, Inc., Respondent and Cross–Appellant.

No. 03CA0815.

Colorado Court of Appeals,
Div. III.

Sept. 23, 2004.

Rehearing Denied Dec. 30, 2004.

Certiorari Denied May 16, 2005.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2003.

Wilcox & Ogden, P.C., Ralph Ogden, Denver, Colorado, for Petitioner and Cross–Appellee.

Ken Salazar, Attorney General, Laurie K. Rottersman, Assistant Attorney General, Denver, Colorado, for Respondent Industrial Claim Appeals Office.

Ken Salazar, Attorney General, Jill M.M. Gallet, Assistant Attorney General, Denver, Colorado, for Respondent Subsequent Injury Fund.

White & Steele, P.C., Ted A. Krumreich, Denver, Colorado, for Respondent and Cross–Appellant.

Opinion by Judge GRAHAM.

In these consolidated appeals, claimant, Brent Moland, and employer, Roadway Package System, Inc., seek review of final orders of the Industrial Claim Appeals Office (Panel) assessing penalties against employer for failure to pay a medical bill and concluding that a settlement agreement between the parties was ambiguous as to the waiver of post-settlement agreement penalties. We deny claimant's motion to dismiss, set the orders aside, and remand for further proceedings.

Claimant was injured during the scope and course of employment in 1994 and 1995. At issue in this review is employer's failure to pay a $191.25 bill incurred in 1999 for a physician at the Colorado Imaging Center.

In April 2000, claimant applied for a hearing, seeking payment of the bill and penalties for nonpayment. The hearing was vacated based upon the parties' agreement and entry of a stipulated order for payment of outstanding bills. The parties, through counsel,

reached a full and final settlement agreement of the workers' compensation claim on January 23, 2001.

However, employer neglected to pay the Colorado Imaging Center bill after the settlement agreement was reached. Claimant then requested a hearing at which he sought payment of the bill and penalties for late payment. The administrative law judge, ALJ Harr, denied all penalty claims. The Panel reversed and remanded for further findings, specifically directing the ALJ to reconsider the question of whether employer should be penalized for nonpayment of the bill and whether good cause existed for employer's untimely assertion of the settlement agreement as a bar to the request for penalties. On remand, ALJ Harr ruled that employer had good cause for the delay in raising the affirmative defense and that the settlement agreement barred any penalties for nonpayment prior to its execution. ALJ Harr assessed penalties of $20 per day for nonpayment for the period May 17, 2001 through February 5, 2002.

Employer and claimant sought review of ALJ Harr's order. Claimant argued that ALJ Harr erred in finding good cause for the delay and failed to make findings regarding penalties for the substantial delay in payment after the settlement agreement. The Panel perceived no abuse of discretion in the good cause ruling, but found that the agreement was ambiguous concerning whether penalties had been waived for nonpayment of the bill after the date of the settlement agreement's execution. Once again the Panel remanded for a determination of whether penalties were due for nonpayment of the bill after January 23, 2001.

On remand, ALJ Jones adopted the Panel's conclusion that the ambiguous contract should be construed against employer as the drafter and determined that the agreement did not clearly bar the assessment of penalties for nonpayment that continued for a substantial period after execution of the settlement agreement. Finding no just cause for the substantial delay in paying the $191.25 bill, ALJ Jones levied penalties at the rate of $200 a day for one period and

$500 a day for another period. The penalties totaled $90,800.

## I.

Claimant has asserted that payment of twenty-five percent of the penalties to the Subsequent Injury Fund (SIF) under § 8–43–304(1), C.R.S.2003, is an unconstitutional taking of his property. However, shortly before oral arguments, he moved to dismiss without prejudice this portion of the consolidated appeals. Claimant argues, without particularity, that a full factual record is necessary for resolution of the constitutional issue. However, the SIF and the Panel object to dismissal because claimant moved to join the SIF based on the constitutional question and all parties have briefed the issue.

We agree with the SIF and the Panel and so deny the motion to dismiss. *Seé City of Greenwood Village v. Petitioners for Proposed City of Centennial*, 3 P.3d 427 (Colo.2000)(whether statute is constitutional is a question of law subject to de novo review by the appellate court).

Further, we disagree with claimant that § 8–43–304(1) violates the takings clauses of the Colorado Constitution and the Constitution of the United States.

The SIF, which was established in 1945, is a part of the Colorado Department of Labor and Employment, Division of Workers' Compensation, under the management and administration of the Director of the Division of Workers' Compensation. Section 8–46–101(5), C.R.S.2003. Its purpose is to provide aid to workers who are partially disabled by a previous injury, thereby relieving employers of greater potential liability through the pooling of risks and costs of hiring workers who have suffered previous on-the-job injuries. *Sears, Roebuck & Co. v. Baca*, 682 P.2d 11 (Colo.1984). The SIF is funded in part by a portion of all fines assessed under the penalty statutes, §§ 8–46–102 and 8–43–304(1), C.R.S.2003.

Workers' compensation benefits are property interests that enjoy constitutional protection. *See Whiteside v. Smith*, 67 P.3d 1240 (Colo.2003). However, legislation that

creates and limits such benefits does not unlawfully infringe upon those constitutionally protected property interests. *Wood v. Beatrice Foods Co.*, 813 P.2d 821 (Colo.App. 1991).

■ Claimant presumes that he benefits from, and therefore has a property interest in, the entire penalty assessed against employer. We reject that notion because the plain language of the statute defines and limits a penalty and a resultant benefit in favor of a claimant. The General Assembly has the power and authority to set and limit the benefits. *See Whiteside v. Smith, supra.*

*Kirk v. Denver Publishing Co.*, 818 P.2d 262 (Colo.1991), relied upon by claimant for the argument that the apportionment of the penalty is unconstitutional, is distinguishable because there the relevant statute could not be characterized as a penalty. *See Dove Valley Bus. Park Assocs., Ltd. v. Bd. of County Comm'rs*, 945 P.2d 395 (Colo.1997). In contrast, there is no dispute here that § 8–43–304(1) imposes a penalty on employer.

■ As in *Dove Valley, supra,* claimant's share of the penalty imposed on employer may be reduced without effecting a taking. Accordingly, we conclude that § 8–43–304(1) does not violate claimant's constitutional rights.

## II.

Relying upon certain paragraphs of the settlement agreement approved by the director, employer contends that the ALJ and the Panel erred as a matter of law in concluding that claimant did not waive his right to seek penalties for actions occurring after January 23, 2001. We remand for further findings concerning the intent of the parties.

■ Interpretation of a settlement agreement is a question of law, and the agreement must be enforced as written. *Cary v. Chevron U.S.A., Inc.*, 867 P.2d 117 (Colo.App.1993). A contract is ambiguous if it is fairly susceptible of more than one interpretation and, if so, the determination of the parties' intent is a question of fact. *Dorman*

*v. Petrol Aspen, Inc.,* 914 P.2d 909 (Colo. 1996).

■ The meaning and effect of a contract is to be determined from a review of the entire instrument, not merely from isolated clauses or phrases. *Colo. Farm Bureau Mut. Ins. Co. v. N. Am. Reinsurance Corp.*, 802 P.2d 1196 (Colo.App.1990).

The Panel here determined that there was an ambiguity in the settlement agreement concerning claimant's right to seek penalties for post-approval violations of the agreement, particularly for employer's obligation to pay all authorized medical bills incurred prior to the date of the settlement. As the Panel determined, the paragraphs relied upon by employer contemplate the waiver of existing claims for relief, not claims based on the failure to comply with the agreement. Other paragraphs in the agreement contain explicit warnings concerning several specific rights that claimant surrendered regarding unknown conditions that might arise in the future, including penalties or interest for violation of the Workers' Compensation Act or the rules.

■ Finding an ambiguity, the Panel resolved the perceived doubt in favor of claimant by construing the ambiguity against the employer as the drafter without first remanding to the ALJ in order to provide the parties an opportunity to present evidence of their intent. Nothing in the record indicates the parties' intent in reaching the settlement agreement. We therefore conclude that the Panel should have remanded this matter for further evidence before it construed the ambiguity against employer.

■ "[T]he rule that words of a contract are to be taken most strongly against the party using them 'is the last rule to be resorted to, and never to be applied except when other rules of interpretation fail.'" *Quad Constr., Inc. v. Wm. A. Smith Contracting Co.*, 534 F.2d 1391, 1394 (10th Cir. 1976) (quoting *Patterson v. Gage*, 11 Colo. 50, 56, 16 P. 560, 562 (1888)); *see 5 Corbin on Contracts* § 24.27 (rev. ed.1998); *see also* Williston, *A Treatise on the Law of Contracts* § 32:12, at 480 (4th ed. 1999) ("The rule of *contra proferentem* is generally said to be a

rule of last resort and is applied only where secondary rules of interpretation have failed to elucidate the contract's meaning.").

As Professor Williston notes: "Application of the rule may be further limited by the degree of sophistication of the contracting parties or the degree to which the contract was negotiated." Williston, *supra*, § 32:12, at 481.

█ Here, both parties were represented by competent counsel. In such case, the rule of *contra proferentem* does not automatically apply, particularly in the absence of any findings concerning the parties' intent. *Kinney v. Capitol–Strauss, Inc.*, 207 N.W.2d 574 (Iowa 1973)(where the contract was prepared with the aid and approval of legal counsel, ambiguities are not automatically construed against the drafter).

█ Although numerous Colorado cases apply the rule of *contra proferentem*, most do not address the hierarchy of analysis which should be applied before reaching that tool of construction as a last resort. In cases where insurance contracts are involved, Colorado courts will automatically construe ambiguities against the insurance company. *State Farm Mut. Auto. Ins. Co. v. Nissen*, 851 P.2d 165 (Colo.1993); *First Fin. Ins. Co. v. Albertson's, Inc.*, 91 P.3d 470 (Colo.App. 2004). In contrast, contract cases that do not involve insurance are subject to traditional rules of contract construction, which apply *contra proferentem* only as a last resort. "The primary goal of contract interpretation is to determine and give effect to the intent of the parties." *Ad Two, Inc. v. City & County of Denver*, 9 P.3d 373, 376 (Colo. 2000).

█ Colorado courts have consistently looked to the intent of the parties as the primary means of resolving ambiguity, and although no court since *Patterson* has expressly stated that *contra proferentem* should only be applied as a last resort, that principle has not been rejected. *Cf. Kincaid v. W. Operating Co.*, 890 P.2d 249 (Colo.App.1994)(looking to extrinsic evidence of the parties' intent where ambiguity is found); *see Pepcol Mfg. Co. v. Denver Union Corp.*, 687 P.2d 1310 (Colo.1984). While not specifically setting forth the hierarchy of the tools of contractual analysis, the Colorado cases allude to such a hierarchy and are consistent with the rule espoused in *Patterson*. Thus, if the parties' intent cannot be derived from the plain language of the contract, then the court should consider parol or extrinsic evidence from which their intent may be inferred. Absent such evidence or intent, as a last resort, the court may apply the principle of construing the ambiguous language against the drafter.

Here, the Panel correctly determined that the contract was ambiguous, but should have remanded the matter to the ALJ to consider extrinsic evidence of the parties' intent, particularly where the contract was negotiated by two parties represented by competent counsel. Construing the ambiguity against employer in this case was premature in the absence of consideration of such extrinsic evidence.

### III.

We also note that because the Panel considered the merits of employer's waiver argument, the ALJ should assume that the affirmative defense based on the settlement agreement was timely raised.

Because the parties did not raise the issue, we do not address the question of whether a fine of approximately $91,000 for nonpayment of a $191 bill was an excessive fine under the Eighth Amendment to the United States Constitution and article II, § 20 of the Colorado Constitution.

The motion is denied, the orders are set aside, and the case is remanded for further proceedings consistent with this opinion.

Judge TAUBMAN and Judge DAILEY concur.