Opinion by JUDGE BERNARD
¶ 1 Should an administrative law judge reopen a settlement of a workers' compensation claim on the grounds of mutual mistake of material fact if (1) the worker later discovered an injury that was unknown at the time of the settlement and that was related to the original injury; and (2) the settlement agreement clearly stated that the worker would forever waive his right to ask his employer for compensation for any such unknown injuries? Under the facts of this case, we conclude that the answer to this question is "no."
¶ 2 The worker in this case, Victor England, was injured while working for the employer, Amerigas Propane. (Amerigas's insurer, Indemnity Insurance Company of North America, is also a party to this case. Because the insurer's interests are aligned with Amerigas's interests for the purposes of this appeal, we shall refer to them collectively as "the employer."). The worker filed a claim for compensation.
¶ 3 The worker and the employer agreed to settle the claim. The worker later moved to reopen the claim. An administrative law judge (ALJ) agreed with the worker's contentions, and she reopened the claim. The employer appealed the ALJ's order to a panel of the Industrial Claim Appeals Office. The Panel affirmed.
¶ 4 The employer then filed this appeal. We set aside the order because we conclude that the Panel's decision affirming the ALJ's order reopening the claim was not supported by the applicable law.
I. Background
¶ 5 The worker, a truck driver, fell on some ice while he was making a delivery for the employer in December 2012. He seriously injured his right shoulder. The employer admitted that this injury was related to the worker's job.
¶ 6 Surgeons operated on the shoulder twice to repair the injury, once in February of 2013 and once in May of the same year. The February surgery was significant. It was a total shoulder replacement. The worker's shoulder dislocated after the first surgery, so the surgeons operated again in May to correct that problem.
¶ 7 In September 2013, the worker and the employer agreed to settle the worker's claim. The worker had not yet reached maximum medical improvement, so he had not received a permanent impairment rating. He nonetheless decided to settle his claim.
¶ 8 The worker and the employer executed a standard written settlement agreement that the Division of Workers' Compensation had previously approved to be used in all workers' compensation settlements. The worker and the employer were represented by attorneys when they negotiated and then executed the agreement.
¶ 9 The agreement contained several conditions that are pertinent to this appeal.
¶ 10 The introductory paragraph stated that, because the parties wanted "to avoid the expense and uncertainty of litigation," they "wish[ed] to FOREVER" settle the worker's claim.
¶ 11 Paragraph one described the "alleged injuries" that the agreement covered. They were "cervical pain strain sprain"; "bilateral shoulder pain"; "thoracic pain strain sprain";
*182 and "lumbar pain strain sprain." Paragraph one also stated that "[o]ther disabilities, impairments and conditions that may be the result of these injuries ... but that are not listed here are, nevertheless, intended by all parties to be included in and resolved FOREVER by this settlement."
¶ 12 The employer paid the worker $35,000.
¶ 13 Paragraph four of the agreement stated: "The parties stipulate and agree that this claim will never be reopened except on the grounds of fraud or mutual mistake of material fact."
¶ 14 Paragraph six read:
[The worker] realizes that there may be unknown injuries, conditions, diseases or disabilities as a consequence of these alleged injuries or occupational diseases, including the possibility of a worsening of the conditions. In return for the money paid or other consideration provided in this settlement, [the worker] rejects, waives and FOREVER gives up the right to make any kind of claim for workers' compensation benefits against [the employer] for any such unknown injuries, conditions, diseases, or disabilities resulting from the injuries or occupational diseases, whether or not admitted, that are the subject of this settlement.
¶ 15 Paragraph seven stated that the worker understood that the settlement would be final. Once it was approved, the settlement would "FOREVER close [ ] all issues" relating to his claim.
¶ 16 Paragraph eleven stated that the worker had "reviewed and discussed" the settlement's terms with his attorney, that he had been "fully advised," and that he understood the rights that he was giving up by settling the claim.
¶ 17 About a month after the ALJ had approved the settlement, the worker decided to see his doctor because he had been experiencing a lot of pain in his shoulder since the May surgery. The doctor x-rayed the shoulder, and the x-ray showed that there was a fracture in the right scapula. Up to this point, no one knew that this fracture existed.
¶ 18 The doctor developed a theory to explain the fracture. He thought that it had been caused by a screw that had been inserted in the shoulder during the second surgery. The screw caused a stress fracture in the bone.
¶ 19 The doctor thought that it would take a couple of months for the fracture to develop. So it could have been in its nascent stages when the worker and the employer executed the settlement agreement.
¶ 20 The worker filed a motion to reopen the settlement. He alleged that the newly discovered stress fracture was a mutual mistake of material fact that would (1) allow him to reinstate his workers' compensation claim; and (2) justify an award of temporary total disability benefits.
¶ 21 The ALJ held an evidentiary hearing on the worker's motion. She then issued a written order.
¶ 22 The ALJ found that (1) neither the worker nor the employer could have known about the fracture in the worker's scapula when they settled the worker's claim; (2) the screw that the surgeons had inserted into the scapula had caused the fracture; and (3) the fracture existed when the worker and the employer settled the claim.
¶ 23 Based on these factual findings, the ALJ concluded that the unknown fracture qualified as a mutual mistake of material fact that justified the worker's request to reopen the settlement. See § 8-43-204(1), C.R.S.2015 (approved workers' compensation settlements can only be reopened on the grounds of fraud or mutual mistake of material fact). So the ALJ awarded the worker temporary total disability benefits starting on the date of the settlement, "and continuing, subject to a credit for the amount paid at the time of settlement and a proper Social Security offset." A panel of the Industrial Claim Appeal Office affirmed the ALJ's order on review.
II. The Employer's Contention
¶ 24 The employer raises several contentions on appeal. We only need to address one of them.
¶ 25 The employer directs us to the language of the agreement, and in particular *183 paragraph six. This language states that the worker forever waived his right to compensation for "unknown injuries" that arose "as a consequence of" or "result[ed]" from the original injury. The worker therefore waived his right to file the motion to reopen the settlement because the fracture in his scapula was an unknown injury at the time of the settlement that had been a consequence of, or had resulted from, the original shoulder injury.
¶ 26 We agree.
III. Standard of Review and General Legal Principles
¶ 27 To resolve the employer's contention, we must decide what paragraph six means in light of the language in paragraph four, which allows an ALJ to reopen a settlement on the "grounds of .... [a] mutual mistake of material fact." Our interpretation of the language of the settlement agreement is a question of law. Moland v. Indus. Claim Appeals Office, 111 P.3d 507, 510 (Colo.App.2004). We review such questions de novo. See Oster v. Baack, 2015 COA 39, ¶ 35, 351 P.3d 546.
¶ 28 We determine the meaning of the language in a settlement agreement by reviewing all of the agreement, not just isolated parts of it. Moland, 111 P.3d at 510. If the language of the agreement is "plain [and] clear, and no absurdity is involved," we must enforce it as written. Cary v. Chevron U.S.A., Inc., 867 P.2d 117, 119 (Colo.App.1993).
¶ 29 Our review is limited by section 8-43-308, C.R.S.2015. As is pertinent to this case, we may only set aside the Panel's order if "the award or denial of benefits was not supported by applicable law." Id.
IV. Analysis
¶ 30 We conclude, for the following reasons, that the ALJ's decision to reopen the settlement agreement was not supported by the applicable law.
A. The Language of Paragraphs Four and Six
¶ 31 Paragraph six states that
• the worker "realize[d]" that there could be "unknown injuries ... as a consequence of" the original injury to his shoulder;
• he "reject[ed], waive[d] and FOREVER g[a]ve up" his right "to make any kind of claim for workers' compensation benefits against" the employer; and
• this waiver applied to "any such unknown injuries ... resulting from the [original] injur[y] ... that [was] the subject of this settlement." (Emphasis added.)
¶ 32 This language is clear and unequivocal. We therefore must enforce paragraph six as it is written. Cary, 867 P.2d at 119.
¶ 33 When we read paragraphs four and six together, see Moland, 111 P.3d at 510, we conclude that the unknown injuries described in paragraph six are excluded from the scope of the phrase "mutual mistake of material fact." If the unknown injuries covered by paragraph six could be mutual mistakes of material fact, then, contrary to paragraph six, the worker could not "reject [ ], waive[ ] and FOREVER give[ ] up" his right "to make any kind of claim for workers' compensation benefits against" the employer for such unknown injuries.
¶ 34 Such a result would render paragraph six meaningless. We cannot do that. See Newflower Mkt., Inc. v. Cook, 229 P.3d 1058, 1061 (Colo.App.2010) ("Our primary obligation is to implement the contracting parties' intent according to the contract's plain language and meaning by giving effect to all provisions so that none is rendered meaningless.") (emphasis added). And we have not found any case that states that a waiver such as the one contained in paragraph six is void as against public policy in workers' compensation cases.
¶ 35 We therefore conclude that paragraph six covers the scapula fracture. It was an unknown injury at the time of the settlement. The ALJ found that it was a consequence of the original injury because it had been caused by a surgery that had been designed to correct the original injury. And, although unknown, it existed when the worker settled *184 his claim. We therefore further conclude that the worker "reject[ed], waive[d] and FOREVER g[a]ve up" his right "to make any kind of claim for workers' compensation benefits against" the employer for the scapula fracture.
¶ 36 Our analysis is buttressed by other paragraphs in the settlement agreement. See Moland, 111 P.3d at 510.
¶ 37 For example, the introductory paragraph announced the intent of the worker and the employer to settle the claim forever.
¶ 38 Paragraph one described the injuries that prompted the settlement, which included "bilateral shoulder pain." It added that "[o]ther disabilities, impairments and conditions that may be the result of these injuries ... but that are not listed here are, nevertheless, intended by all parties to be included in and resolved FOREVER by this settlement."
¶ 39 Paragraph seven stated that, once the agreement was approved, it would "FOREVER close[ ] all issues" relating to the worker's claim. And paragraph eleven made clear that the worker understood the entire agreement because he had "reviewed and discussed" its terms with his attorney, who had "fully advised" him about the agreement, and that he understood the rights he was giving up.
B. Scotton, Gleason, Loper, and Padilla
¶ 40 The cases upon which the worker relies do not persuade us that we should reach a different result.
1. Scotton and Gleason
¶ 41 Scotton v. Landers, 190 Colo. 27, 30, 543 P.2d 64, 66-67 (1975), discussed the effect of a mutual mistake of material fact on a release in a personal injury case. Our supreme court concluded that the trial court was not necessarily bound by the language of the release, which referred to "known and unknown, foreseen and unforeseen" injuries. Id. But, as the court later made clear in Gleason v. Guzman, 623 P.2d 378, 386-87 (Colo.1981), Scotton also stands for the proposition that a "general release ... will constitute a bar to a claim for an unknown injury [if] 'it ... appear[s] from the circumstances surrounding the transaction that such was [the claimant's] clear intention.' " Id. (quoting Scotton, 190 Colo. at 31, 543 P.2d at 67 ).
¶ 42 We think that there are such circumstances in this case. The ALJ made several findings of fact about events that had preceded the settlement that are pertinent to our analysis of this language from Scotton and Gleason .
• The worker was represented by an attorney when he executed the agreement.
• He "continued to experience severe pain and instability in his shoulder joint and blade" after the May 2013 surgery.
• In July 2013, a doctor thought that the worker would reach maximum medical improvement within "two to three months."
• The worker and the employer thought that the worker was "recovering from his ... surgery with the expectation that he would soon reach" maximum medical improvement.
• The worker and the employer settled the claim before the worker reached maximum medical improvement.
• The worker understood that, by executing the agreement, "the case that settled his claim was closed."
¶ 43 The ALJ also made findings of fact concerning events that occurred after the settlement.
• The worker continued to have pain and instability in his right shoulder.
• In October 2013, he learned that his scapula was fractured after the doctor x-rayed the shoulder.
• The worker testified that he would not have settled his claim if he had known about the fracture.
• The employer did not know about the fracture before the x-ray.
¶ 44 The ALJ's findings of fact, which are supported by substantial evidence in the record, make clear that neither the worker nor the employer knew about the fracture in the worker's scapula before they entered into the agreement. In other words, as we have concluded *185 above, the fracture was an "unknown injury."
¶ 45 But the court's findings also point out that (1) even though the worker and the employer thought that the worker would soon reach maximum medical improvement, the worker had not yet arrived at that point when they executed the agreement; (2) the worker was experiencing pain and instability in his shoulder when he settled his claim; and (3) he understood that, when he executed the agreement, his case had been settled.
¶ 46 We recognize that the worker testified later that he would not have settled his claim if he had known of the fracture in his scapula. But we think that this testimony merely emphasizes that the fracture was, in the language of paragraph six, an "unknown injury" when the worker settled his claim. And, during cross-examination at the hearing on his motion to reopen, the worker admitted that, when he settled his claim, he understood that the settlement included "any conditions resulting from [his] fall" and "anything that had to do with [his] prior surgeries."
2. Loper
¶ 47 Loper v. Industrial Commission, 648 P.2d 1092, 1094 (Colo.App.1982), preceded the legislature's enactment of section 8-43-204(1). In that case, a referee of the Department of Labor had decided that he would not set aside a settlement after the director of the Industrial Commission had approved it. The division held that "a release may be set aside in a workmen's compensation case" if the release had been "obtained as a result of a mutual mistake of material fact."
¶ 48 But section 8-43-204(1) and paragraph four of the agreement make this same point. And Loper, which cited Gleason, did not refer to Gleason 's holding that a general release can bar a claim for an unknown injury if the surrounding circumstances make clear that the claimant clearly intended to do so. See Scotton, 190 Colo. at 31, 543 P.2d at 67.
3. Padilla
¶ 49 We are also aware that our supreme court held in Padilla v. Industrial Commission, 696 P.2d 273, 276 (Colo.1985), that (1) "claims resolved by settlement agreements remain subject to ... reopening ... in the same manner as claims resolved by the granting of an award"; and (2) the parties to an agreement "may not by private agreement modify this strong legislative policy." Id.
¶ 50 But the legislature restricted Padilla 's scope when, about two months after the supreme court decided Padilla, it amended a predecessor statute to section 8-43-204(1). See Ch. 77, sec. 2, § 8-53-105, 1985 Colo. Sess. Laws 355. That amendment reduced the number of potential grounds for reopening a settlement to two: fraud and mutual mistake of material fact. See Cary, 867 P.2d at 118 ("[T]he settlement in this case contained language waiving the claimant's right to reopen her claim on grounds other than fraud or mutual mistake of material fact.").
¶ 51 Padilla did not address the issue whether the parties to an agreement could limit what factors would qualify as a mutual mistake of material fact. And the context of Padilla 's statement that the parties to an agreement could not modify "strong legislative policy" was the supreme court's conclusion that, for the purposes of reopening a settlement agreement, there was no difference between a settlement agreement and an award. 696 P.2d at 278-79. The court did not consider whether an agreement could define what conditions did or did not qualify as a mutual mistake of material fact. Indeed, the court could not have considered that question because, as we have observed above, section 8-43-204(1) did not exist when the court decided Padilla .
¶ 52 And our analysis does not undercut section 8-43-204(1). This statute allows an ALJ to reopen a settlement because of a mutual mistake of material fact. But it does not say anything about whether claimants can agree to waive the right to benefits in an agreement when they, like the worker, clearly intended to give up those benefits, and they were fully aware of the risks that they assumed.
*186 C. The ALJ's Order and Gleason
¶ 53 The ALJ concluded that Gleason supported her analysis. She looked to the same language that we looked at above: a general release bars a claim for an unknown injury if the surrounding circumstances show that the claimant intended to bar such claims. See Gleason, 623 P.2d at 386-87. She then focused on the supreme court's subsequent observation that (1) the plaintiff in Gleason could not have intended to release the defendant "for future unknown injuries or the later consequences of known or unknown injuries"; if (2) the claimant had not been fully aware "of the basic character of the primary injury for which the release was sought and executed." Id. at 387.
¶ 54 The ALJ then concluded that the worker "could not have been aware of the scapula fracture-the basic character of the primary injury -until October 15, 2013, when the fracture was discovered by x-ray." (Emphasis added.)
¶ 55 But this conclusion is inconsistent with the ALJ's factual findings, and that inconsistency leads us to conclude that she misapplied Gleason . The ALJ found that the fracture in the scapula did not exist at the time of the original injury. It was caused, instead, by the surgery designed to repair the original injury. And the fracture "exist[ed], undiagnosed and undiscovered" when the worker and the employer settled the worker's claim. In other words, the scapula fracturecould not have been part of the primary injury that occurred when the worker slipped on the ice and fell on his right shoulder and that led to his two surgeries.
¶ 56 So, instead of supporting the ALJ's analysis, Gleason undermines it because the worker was fully aware "of the basic character of the primary injury for which the release was sought and executed." See id. And, being fully aware, the circumstances surrounding the settlement that we have described above showed that he clearly intended to waive his right to benefits for the scapula fracture. See id.
¶ 57 The Panel's order is set aside. We remand this case to the Panel to direct the ALJ to vacate the award of benefits to the worker and to deny his motion to reopen the settlement.
Furman and Rothenberg* , JJ., concur

Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5 (3), and § 24-51-1105, C.R.S. 2015.