FILED
United States Court of Appeals
Tenth Circuit

February 23, 2011

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

_____

WEST RIDGE GROUP, LLC and DOES
1-100,

      Plaintiffs-Appellants,

v.

FIRST TRUST COMPANY OF ONAGA;
ROGER CROUCH; MORRILL and
JANES BANK and TRUST; NEILL H.
TAYLOR; and ROES [DOES] 2-100,

      Defendants-Appellees.

_____

PHILLIP ANSELMO,

      Attorney - Appellant.

No. 09-1358
(D.C. No. 1:07-CV-01587-WYD-BNB)
(Dist. of Colorado)

_____

ORDER AND JUDGMENT*

_____

Before **HARTZ, HOLLOWAY** and **TACHA**, Circuit Judges.

_____

This litigation arises from a real estate transaction. Plaintiff-appellant West Ridge

Group, LLC commenced the action in state court in Colorado against two individuals –

Neill H. Taylor and Roger Crouch – and two banks – the First Trust Company of Onaga,

_____

* This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. This court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

and Morrill and Janes Bank and Trust (the Bank Defendants).  The Defendants removed the action to federal district court on the ground that the claims pleaded included one for violation of the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. §§ 2601-2617, and thus came within the federal district court's jurisdiction.

The federal district court eventually granted the Defendants' motions for summary judgment in substantial part, holding that the Bank Defendants were entitled to summary judgment on all claims against them and that Defendants Crouch and Taylor were entitled to summary judgment on all claims except a breach of contract claim.  After a bench trial, the district court granted judgment for Crouch and Taylor on that claim as well.  Plaintiff brings this appeal.[1]

## I

In 2000, Plaintiff West Ridge Group purchased a property of about 160 acres in Delta County, Colorado, from Head Acres, Inc.  In the transaction, West Ridge gave a promissory note in the original amount of $530,000 for a portion of the purchase price and executed a deed of trust on the real property to secure the debt.  The description of the property in the deed of trust refers to "parcel one" and "parcel two," with parcel two further described as including "parcel A" and "parcel B."  A hand-drawn diagram introduced in evidence in this litigation shows the property divided into four parcels,

[1]Plaintiff earlier attempted to appeal from the summary judgment ruling, but quickly dismissed that appeal.  Plaintiff separately sought in this court a writ of mandamus to compel the district court to grant a jury trial on the breach of contract claim and to reverse the summary judgment against it on several claims.  This court denied the writ.

-2-

labeled A, B, C, and D. The dispute underlying this litigation concerns "Parcel C," which consists of about 40 acres, and the following provision of the note:

> Borrower may pay, in addition to other required and scheduled payments, a pro-rata share of any outstanding indebtedness to obtain a corresponding pro-rata partial release of the aforesaid deed of trust, at any time.

In 2004, Crouch and Taylor purchased the note from Head Acres.

Soon after purchasing the property, Plaintiff had begun construction of a lodge on Parcel C, which was planned to be the housing portion of a "dude ranch" operation. Construction was slowed for several years by difficulty in obtaining financing, but during this time Plaintiff proceeded to the extent that it could finance the project itself. Then, in 2006, Plaintiff was able to obtain a loan to complete the lodge. The new lender, Farm Credit Services, required a first mortgage on Parcel C as a condition for the loan. Thus, Plaintiff contacted Crouch and Taylor with a request to repay a portion of the debt in exchange for a release of the deed of trust on Parcel C.

Plaintiff proposed paying one-fourth of the outstanding balance of the loan in exchange for the release of the deed of trust as to Parcel C, basing its offer on the fact that Parcel C represented about one-fourth of the land subject to the deed of trust. Crouch and Taylor rejected that proposal, and eventually obtained an appraisal of Parcel C and the remainder of the ranch. That appraisal estimated the value of Parcel C at about four million dollars, with the remainder of the ranch valued at about $300,000. Using the ratio of the appraised values, Crouch and Taylor offered to release Parcel C for $476,795.53, plus legal and appraisal fees of slightly more than $4,600.00. The balance due on the

note at the time was calculated to be $523,378.85.

At some point, the proceeds of the Farm Credit loan were placed in escrow. In January 2007, Crouch and Taylor effected the withdrawal from the escrow account of a sum equal to the amount they claimed for the partial release of the deed of trust plus their claimed expenses, and executed a release of the deed of trust as to Parcel C. Plaintiff alleges that this was done without notice to it. Plaintiff commenced this litigation some months later.

**II**

The district court found that Plaintiff had waived trial by jury. On motions for summary judgment by all of the Defendants, the court found in favor of the Bank Defendants on all claims and granted the motions of Defendant Crouch and Defendant Taylor on all claims except the breach of contract claim. That claim was tried to the court over two days. After trial, the judge issued findings and conclusions and entered judgment in favor of Crouch and Taylor.

**III**

**A**

Among the plethora of issues Plaintiff raises – or at least alludes to – on appeal, the denial of trial by jury is last in the opening brief. But because reversal on this issue would moot a number of other issues for purposes of this appeal, we will address it first.

Plaintiff contends that it was wrongfully deprived of its right to a jury trial on all of its claims. Plaintiff's motion for jury trial was referred to a magistrate judge for initial

consideration, along with a motion by the Bank Defendants to strike Plaintiff's untimely jury demand. The magistrate judge denied Plaintiff's motion and granted the motion of the Bank Defendants. Because we, like the district judge, find the magistrate judge's analysis comprehensive and persuasive, we will summarize it in detail.

In a twelve-page order addressing these cross-motions, the magistrate judge first reviewed the relevant procedural chronology. Plaintiff filed this action in state court on May 18, 2007. Defendants filed notice of removal to federal court on July 26, 2007.[2] On October 11, 2007, the parties agreed to a scheduling order in which they stated that they anticipated a "3-5 day bench trial." Plaintiff filed a notice of demand for jury trial on July 13, 2008, which, the magistrate judge noted, was nearly ten months after the last pleading had been filed in the case. Two weeks after filing the demand, the Plaintiff filed a motion for jury trial.

Under Fed. R. Civ. P. 81(c)(3)(A), the magistrate judge noted, Plaintiff could have filed a demand for jury trial in state court before removal, and that demand would have been sufficient after removal. Plaintiff, however, had not done so. As a result, the issue was governed by Fed. R. Civ. P. 38 and 39. Under Rule 38(d), failure to make a timely demand for jury trial is a waiver.[3] But under Rule 39(b), the trial court may nevertheless

_____

[2]Defendant Taylor had answered and filed a counterclaim for abuse of process before removal; the other Defendants filed answers after removal (and Crouch also filed a counterclaim for abuse of process).

[3]Rule 38(b) provides, in pertinent part, that a party may demand a jury trial by "serving the other parties with a written demand – which may be included in a pleading – no later than 14 days after the last pleading directed to the issue is served" and filing the

grant a jury trial "on motion" and "on any issue for which a jury might have been demanded."

The magistrate judge noted that district courts should exercise their discretion to grant motions for jury trials under Rule 39(b) absent strong and compelling reasons not to do so. *See Nissan Motor Corp v. Burciaga*, 982 F.2d 408, 409 (10th Cir. 1992). On the other hand, it is not an abuse of discretion to deny a Rule 39(b) motion when the failure to timely demand a jury is the result of "mere inadvertence." *Dill v. City of Edmond*, 155 F.3d 1193, 1208 (10th Cir. 1998).

The magistrate judge found that a "strong and compelling reason" existed in this case for denying the belated jury request – the fact that Plaintiff had early in the case consented to a non-jury trial in the scheduling order. The late request for a jury "is based on an apparent change of strategy," the magistrate judge said, and such a deliberate waiver of the right to a jury that is followed by a change of tactics is "even less justification than mere inadvertence."

Even apart from the express waiver, the magistrate judge reasoned, the late jury demand should be rejected due to the excuses offered by Plaintiff's counsel. These included that he was inexperienced in federal court; that he was unfamiliar with the "new" federal rules; and that Defendants had engaged in "forum shopping" by removing the case to federal court, *inter alia*. Most of these excuses amounted to inadvertence, the magistrate judge concluded. There was no improper "forum shopping" involved in the

demand with the court.

-6-

Defendants' exercise of their right to remove the case to federal court. The length of Plaintiff's delay and the apparent fact that the request was based on a change of strategy were determinative, the magistrate judge concluded.

Finally, the magistrate judge noted the "cryptic" argument Plaintiff made. Plaintiff had asserted that there were "extant several pleadings motions" (apparently referring to motions Plaintiff had filed in response to counterclaims by Taylor and Crouch), and that if its motion to dismiss the counterclaims were denied, it would be required to answer the counterclaims, following which it would have ten days to demand a jury trial. The magistrate judge first noted that it was unclear what "pleading motions" were referred to in this contention.[4]

In any event, Plaintiff had never answered the counterclaims, and Defendants had not moved for default. The magistrate judge concluded that the parties had treated the Plaintiff's various motions as a general denial of the counterclaims and that he would "deem" the allegations denied and not require an answer. Contrary to the assertion on which Plaintiff's argument was based, there were no pending motions addressing the counterclaims which would allow further pleadings by the Plaintiff. Moreover, even if there were, that would only permit the Plaintiff to demand a jury trial as to matters raised

---

[4]Three separate filings with various labels had been stricken by the district judge for failure to comply with the judge's practice standards and another had been denied without prejudice when the case had been administratively closed (during a time when Plaintiff's counsel had given notice that he would be in Africa doing humanitarian work and would not always be able to timely respond to the court or to counsel for Defendants).

*in the counterclaims.* It would not permit what Plaintiff desired: another opportunity to demand a jury trial *on the Plaintiff's claims.*

In its opening brief, Plaintiff discusses only the procedural tangle (which was apparently of its own making) that it asserts had extended the time for making a jury demand, mentioning neither the finding that it had affirmatively waived trial by jury early in the proceedings nor the inference that its change of position was tactical. In their brief, Defendants rely in part on Plaintiff's express waiver of trial by jury in the scheduling order. In its reply brief, Plaintiff alleges that Defendants "snuck this in the version [of the scheduling order] adopted by the court . . . ." This scurrilous allegation is not supported by any reference to facts of record.

We review the trial court's denial of an untimely jury demand for abuse of discretion. *See Dill v. City of Edmond*, 155 F.3d 1193, 1208 (10th Cir. 1998) (no abuse of discretion in denial of Rule 39(b) motion where untimeliness of jury demand was due to "inadvertence or oversight"); *Nissan Motor Corp v. Burciaga*, 982 F.2d 408, 409 (10th Cir. 1992) (not an abuse of discretion to deny Rule 39(b) motion when failure to make timely demand results from "mere inadvertence"). Consistent with these holdings, we find no abuse of discretion in this case.

Plaintiff's argument here is significantly weaker than those that were found insufficient in the two cases just cited. Plaintiff has made no response to the district court's finding that the belated jury demand resulted from a change of litigation strategy. The district court's finding that Plaintiff had intentionally waived jury trial in the

scheduling order was not addressed in Plaintiff's opening brief, resulting in waiver of that issue on appeal. *See State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 984 n.7 (10th Cir. 1994). Addressing the issue only in the reply brief is not acceptable, because it does not permit the other side to respond. *See Stump v. Gates*, 211 F.3d 527, 533 (10th Cir. 2000). And addressing the issue in the reply brief by means of a scurrilous allegation unsupported by the record is simply beyond the pale. And we have not even addressed counsel's attempts in the district court to excuse his inadvertence by claiming ignorance of the Federal Rules of Civil Procedure and of the Local Rules of the District of Colorado, which necessarily involved an admission that Plaintiff's counsel had violated his professional duties to his client and the requirements for admission to practice before the district court.

Because Plaintiff has made no legitimate attempt to respond to the finding that it had intentionally waived its right to trial by jury and because all other facts and circumstances also lead to this conclusion, we find no abuse of discretion in the denial of trial by jury.

**B**

We next address another procedural issue which, if there were any merit to it, might impact our analysis of the substantive issues. In analyzing the cross-motions for summary judgment, the district court first considered the Defendants' motion to strike the affidavit of Joseph Cisler, which Plaintiff had submitted in support of its brief in opposition to the Defendants' motion.

The Defendants' motion did not actually ask the court to strike the affidavit in its entirety, but listed specific paragraphs of the affidavit that, Defendants contended, did not state facts that would be admissible in evidence. More specifically, Defendants contended that certain portions of the affidavit contained only hearsay statements rather than statements based on personal knowledge, that certain portions contained only "generalized and conclusory statements" that were not admissible evidence, and that other paragraphs improperly referred to documents that were not attached to the affidavit. Defendants objected to a number of paragraphs on both of the first two grounds just stated, and all of the paragraphs objected to on the third ground had also been objected to on one or both of the first two grounds. The district judge agreed with Defendants' contentions and struck all portions of the affidavit that Defendants had challenged.

Decisions on the admissibility of evidence are reviewed for abuse of discretion. *See, e.g., Cartier v. Jackson*, 59 F.3d 1046, 1048 (10th Cir. 1995). We see no abuse in the ruling at issue here.

Plaintiff's appellate argument on this issue is fundamentally flawed. Plaintiff begins by mischaracterizing the district judge's ruling: "The Judge ruled that because Mr. Cisler is not a member of [West Ridge Group] that his affidavit is hearsay and inadmissible." Opening Brief at 21. This fictitious basis for the ruling would of course be unsupported in the law of evidence. Plaintiff repeats the error, phrased slightly differently, in its Reply Brief at 8.

Plaintiff further asserts that it was error to strike the affidavit without granting

leave to amend, citing Fed. R. Civ. P. 15(a). That rule addresses amendments to pleadings, not affidavits, and is inapplicable here on its face. Moreover, Plaintiff does not say – and the record does not reveal – that leave to amend was sought in the district court.

What Plaintiff does not assert on appeal is any reasoned basis for the contention that the district court erred. Not a single paragraph of the affidavit is specifically asserted to have been a statement admissible in evidence, for example. Moreover, most of the issues that were decided against Plaintiff on summary judgment were, as our analysis *infra* will show, clearly correct rulings of law on which the Cisler affidavit, had it been admitted in its entirety, would have been of no assistance to Plaintiff or to the court.[5]

## C

Plaintiff argues that the district court erred in dismissing its claim of negligence and in disallowing punitive damages, two of the rulings made on Defendants' motions for summary judgment. We conclude that the district court's rulings were correct. In Colorado, a party to a contract who suffers economic loss from an alleged breach may not bring an action in tort, such as a negligence action, unless a duty independent of the contract existed and was also breached. *Town of Alma v. Azco Const., Inc.*, 10 P.3d 1256, 1264 (Colo. 2000). Plaintiff makes a conclusory statement that there exists in this case a duty of care independent of any contractual obligations, without specifying what duty that might be and without further explication.

---

[5]Also, our record review reveals that when the breach of contract claim was tried to the court, Plaintiff was able to establish through admissible evidence many of the points that were included in the Cisler affidavit.

-11-

We do note, nevertheless, that Plaintiff makes a passing reference to the "methodology of the appraisals and the conclusions reached." As we discuss *infra*, allegations by Plaintiff about the appraisal process are certainly troubling and, unlike far too many of the allegations and contentions advanced by Plaintiff in this court and in the district court, these allegations do find some support in the evidence. But Plaintiff does not support this reference with any legal argument as to whether or why the appraisal process should be considered to be independent of the contractual relationship. Thus, Plaintiff fails to present an adequate argument on this issue, and we can only affirm the district court. *See Gross v. Burggraf Constr. Co.*, 53 F.3d 1531, 1547 (10th Cir. 1995).

Plaintiff makes a similarly deficient presentation in support of its contention that it should have been allowed to claim punitive damages. Because we hold that Plaintiff has failed to show reversible error that would resuscitate any claim under which punitive damages could be recovered, we affirm the district court on this point as well. We note, additionally, that in the four sentences devoted to the presentation of this issue, Plaintiff refers to an action for injury to property and to a fraud claim. We have found no assertion of such claims in the record.

**D**

Plaintiff addresses four sentences in its opening brief to its claim under the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601-2617. As with a number of the issues touched on in this appeal, the briefing is inadequate. First, as the district court noted, RESPA is inapplicable to commercial transactions. Plaintiff's argument simply

assumes that this court should apply the procedural protections of the act without stating, much less discussing, the coverage of the act and why it could be held to apply here. We decline to make the argument for Plaintiff.

Plaintiff does offer one reason – a totally specious one – for applying RESPA here. It says that the district court had determined that the act applied when it denied Plaintiff's motion to remand the case to state court. Counsel does not consider the difference between pleading a claim and offering evidence to support the claim in response to a motion for summary judgment. The district court previously had ruled, in consideration of the Plaintiff's motion to remand the case to state court, that Plaintiff had *alleged* a claim under RESPA. On summary judgment, the judge pointed out that the prior ruling was not on the merits. We agree and need say no more. Plaintiff has not provided any authority that would lead us to conclude that the district court erred in its ruling on this claim, and we are quite certain that the ruling was correct.

### E

Plaintiff also alleged injury from violation by the Defendants of the Colorado Unfair Practices Act, Colo. Rev. Stat. §§ 6-2-101 *et. seq.* The district court very briefly noted a number of reasons for granting summary judgment for the Defendants on this claim. First, the court noted that, while Plaintiff alleged that "Defendants" were in the business of making loans and holding notes, it was unclear to which Defendants the allegations referred. Moreover, Plaintiff proffered no evidence in the district court to support that assertion. But even if that assertion were assumed to be true, the district

judge continued, Plaintiff had not attempted "to tie any alleged action or inaction by any of the Defendants to conduct prohibited" by the state statutes. Plaintiff had "made no attempt," the judge said, to articulate a "challenged practice," *i.e.,* the conduct underlying the claim.

In addition, an element of a claim under the state act is that the defendant's "unfair or deceptive trade practice" be one that "significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property . . . ." *Hall v. Walter*, 969 P.2d 224, 235 (Colo. 1998). Plaintiff failed to show that any genuine issue of material fact existed as to whether these Defendants' actions significantly affected the public so as to bring the claim within the purview of the act, the judge held.

On appeal, to convince us that the district judge erred in these holdings, Plaintiff repeats, without citation to the record, that "the evidence" shows that "defendants are in the business of making loans and holding notes and trust deeds." This is followed by the bald assertion that at least half-a-dozen loans "to people in the public were extant" during the time that Plaintiff's note was outstanding. Plaintiff concludes that this is "sufficient public impact" for liability under the state act. Neither evidence nor legal authority is provided to support these conclusory statements.

We will not discuss this issue further. It is the appellant's duty to provide an argument supported by appropriate citations to the record and legal authorities.

**F**

We next address Plaintiff's contentions that the trial court erred in granting

-14-

summary judgment for the Defendants on two claims for equitable relief. Plaintiff had sought recovery for unjust enrichment and an accounting, both equitable remedies.

Unjust enrichment is a claim in quasi-contract based on principles of restitution. *DCB Constr. Co. v. Central City Devp. Co.*, 965 P.2d 115, 118 (Colo. 1998) (en banc). It is a "remedy designed to avoid benefit to one to the unfair detriment of another." *Salzman v. Bachrach*, 996 P.2d 1263, 1265 (Colo. 2000) (en banc). But it is a remedy designed for circumstances in which other remedies are unavailable. As such, it is not available as a mere alternative legal theory when the subject is covered by an express contract. *Interbank Investments, LLC v. Eagle River Water & San. Dist.*, 77 P.3d 814, 819 (Colo. App. 2003). This was the reasoning of the district court in granting summary judgment for Defendants on this claim.

We conclude that the district court was correct. Plaintiff presents an inadequate argument that fails to address the linchpin of the district court's ruling.

As to Plaintiff's claim for an accounting, the district court noted that Plaintiff was required to prove both a demand for an accounting and a refusal to comply by the Defendants. Plaintiff had not provided evidence that either of these requirements had been met, so the district court granted summary judgment to the Defendants on that claim.

Plaintiff simply asserts, in its opening brief, that it did demand an accounting and that Defendants "never did properly respond." No evidence is cited to support these assertions. Once again, Plaintiff has failed to properly present an issue for our review, and we can only affirm the district court's ruling on the issue.

## G

We next consider Plaintiff's arguments addressed to the district court's grant of summary judgment in favor of the Bank Defendants. The district court found that there was no evidence of any contractual relationship between the Plaintiff and the Bank Defendants and so granted summary judgment for the Bank Defendants on the breach of contract claim. As for tort claims, the judge had granted summary judgment for all Defendants on all the Plaintiff's assorted theories. Even though this obviously left no basis for any liability of the Bank Defendants, the district judge commented further on Plaintiff's theories. The judge noted that Plaintiff argued for liability on the basis of *respondeat superior*, but Plaintiff contradicted itself by arguing in its briefing that the Bank Defendants were both employer and employee.

In its attempts to identify error in the district court's grant of summary judgment to the Bank Defendants, Plaintiff first asserts that the two banks are really one because, it says, they have a common parent company.[6] This is patently frivolous.[7]

The district judge found that there was no contract between the Plaintiff and the Defendant Banks. Plaintiff does not contend otherwise on appeal. The district judge said

---

[6]Because it did not establish the basis for this assertion in the district court, Plaintiff asks this court to take judicial notice of this fact, citing public sources. We need not consider whether this is the type of fact of which judicial notice can be taken because standing alone it has no relevance whatsoever.

[7]Of course, under limited circumstances, two separate corporations with a common parent could be treated as a single entity under the law. But the mere fact of common ownership comes nowhere close to establishing the circumstances under which corporate form could be disregarded, a basic tenet of the law of corporations.

that Plaintiff contradicted itself as to whether the Defendant Banks were agents with Crouch and Taylor being the principals, or the other way round. On appeal, Plaintiff says it does not matter and goes on to discuss the potential liability of fiduciaries in two reported ERISA cases. We fail to see how this is relevant to the case before us. Most importantly, we have held that the district court correctly granted summary judgment for the Defendants on all tort theories. As a result, there is simply no claim under which the Bank Defendants could be liable to Plaintiff.

## H

We have finally arrived at the single claim that lies at the heart of the matter: Plaintiff's claim against Crouch and Taylor for breach of contract. Our review is *de novo* because the district court was interpreting a contract, including deciding whether the contract was ambiguous, both of which are questions of law.

The dispute in the district court was primarily over the interpretation of paragraph 7 of the note, which we quoted earlier in this opinion but will quote again for convenience:

> Borrower may pay, in addition to other required and scheduled payments, a pro-rata share of any outstanding indebtedness to obtain a corresponding pro-rata partial release of the aforesaid deed of trust, at any time.

The parties' positions on the interpretation of this provision were established in the communications leading up to the partial payment and resulting partial release and have not changed during the litigation. Plaintiff insists that the provision is a "straight dollars-for-acres" arrangement, while Crouch and Taylor maintain that "pro rata" should be

-17-

understood as a reference to the relative value of the parcel to be released compared to the entire property.

The district judge found that paragraph 7, in its "plain and ordinary meaning," did not encompass Plaintiff's request for full release of Parcel C (or of any specific part of the whole), nor did the note or other documents assign specific values to any of the acreage within the ranch. Because Plaintiff's request for release of Parcel C was not pursuant to a specific provision of the note, the court found that Crouch and Taylor did not breach the agreement by their actions in response to the request.

Even if paragraph 7 were ambiguous, Plaintiff had produced no extrinsic evidence to support its interpretation, the district judge reasoned in the alternative. Mr. Cisler testified on Plaintiff's behalf, but he was not a party to the note, and his understanding of the intended meaning of paragraph 7 was based "solely on hearsay."[8]

---

[8]This ruling by the district court is somewhat troubling. The evidence showed that Plaintiff West Ridge is a small entity, basically a family-owned enterprise (although it is not clear if it is a single family or two families). Mr. Cisler testified, without objection, that he was a member of West Ridge at the time the property was purchased from Head Acres. And because Plaintiff is such a closely held entity, it is somewhat surprising that the court ruled that Cisler was not testifying from personal knowledge when his testimony was not challenged on that basis.

Nevertheless, any error by the district judge in declining to consider this testimony would be harmless, we conclude. Arguably, the judge could have found that Mr. Cisler's testimony supported Plaintiff's construction of paragraph 7 in part, but that would not be sufficient to change the result. That is, Mr. Cisler testified that Plaintiff had specifically requested provisions in the note that would enable it to accomplish what it sought here – the release of a specific portion of the entire ranch in exchange for payment of a pro rata portion of the total indebtedness. But this stops short of the real point of contention here, which is how the parties were to determine the amount of the pro rata payment. On that crucial point, Mr. Cisler merely opined that the language of the note was a "dollars-for-acres" provision, but never testified that the parties to the note had even discussed what

-18-

The note does not specify whether the relationship between the release payment and the property released should be based on the area of the property to be released or its value. Both parties had presented evidence that Parcel C was the most valuable piece of the ranch. Following Plaintiff's interpretation of "dollars for acres" and allowing it to procure the release of the most valuable part of the ranch by paying an amount proportionate to the number of acres to be released "could potentially leave Crouch and Taylor under collateralized." Therefore, the judge concluded, Defendants' interpretation was "reasonable under the circumstances."

On appeal, Plaintiff's argument seems to be twofold: first, that paragraph 7 is unambiguously a "dollars-for-acres" provision, and second, that if there is ambiguity, the district court erred by not construing the ambiguity against Defendants because their predecessor-in-interest drafted the note.

We conclude that the district court was correct in rejecting Plaintiff's contention that the note unambiguously provides that "pro rata" means "dollars for acres." There is simply no such language in paragraph 7. Nor is Plaintiff's proposed construction the more logical or likely. Given that the ranch encompasses approximately 160 acres, with some parcels having improvements and others not, Plaintiff's construction could have resulted in the lender having its security weakened, as the district judge indicated.

Plaintiff stresses the fact that the note does not contain any language directly providing for appraisals, value or methodology. But the frequent repeating of the

"pro rata" was to mean, much less that they had reached an agreement on the point.

-19-

contention that paragraph 7 means "dollars for acres" casts no light on the inquiry. Plaintiff does not directly address the reasoning of the district court, although its briefs do include some statements to the effect that the Defendants emerged from the transaction with an outstanding balance on the note of less than $50,000, secured by 120 acres that included substantial improvements, most notably a house with seven bedrooms and seven baths.

The note, however, must be interpreted not only as to the specifics of Plaintiff's request for release of Parcel C but in a way that would apply in other circumstances as well. We note in this regard that Plaintiff's own witness, a representative of the Plaintiff's new lender, Farm Credit Services, testified on direct examination that as a lender he would want to maintain the loan-to-value ratio when modifying a loan.

Plaintiff's reliance on the principle of construing ambiguities against the drafter of the instrument is not persuasive, either. This principle, *contra proferentem*, "is the last rule to be resorted to, and never to be applied except when other rules of interpretation fail." *Quad Constr., Inc. v. Wm. A. Smith Contracting Co.*, 534 F.2d 1391, 1394 (10th Cir. 1976) (quoting *Patterson v. Gage*, 11 Colo. 50, 56, 16 P. 560, 562 (1888)). Courts in Colorado "have consistently looked to the intent of the parties as the primary means of resolving ambiguity, and although no court since *Patterson* has expressly stated that *contra proferentem* should only be applied as a last resort, that principle has not been rejected*." Moland v. Industrial Claim Appeals Office*, 111 P.3d 507, 511 (Colo. App. 2004).

Although the parties could certainly have expressed their intent more clearly, it is readily apparent that an integral part of the transaction was securing the loan for the benefit of the lender. Of the two possible interpretations of paragraph 7 that have been advanced in this litigation, that of Defendants is thus more in keeping with the overall aims of the transaction. Following established Colorado law by looking to the intent of the parties "as the primary means of resolving ambiguity," *id.*, we hold that the term "pro rata" in paragraph 7 of the note refers to a ratio of values of the property rather than a ratio of mere acres.[9]

One other point merits attention, nevertheless. Plaintiff asserts, and provided evidence at the bench trial to show, *inter alia*, that the appraiser hired by Crouch and Taylor told them that she was not commercially licensed; that the appraiser was instructed to do a careful, walk-through inspection of the lodge under construction on Parcel C but to do only a cursory, "drive-by" inspection of the buildings on the other parcels; and that the appraiser actually included a seven-bedroom house on Parcel C when that structure was outside of Parcel C.

Based on these irregularities in the appraisal process, *inter alia*, Plaintiff contends that Defendants breached the duty of good faith and fair dealing, which under Colorado

_____

[9]We also note that the evidence as to the drafting of the note does not conclusively establish the factual premise for Plaintiff's argument. Although Mr. Cisler testified that a representative for Head Acres drafted the note, he also – and repeatedly – testified that paragraph 7 and certain other provisions were included at the express request of Plaintiff because Plaintiff anticipated that it would, in the near future, want a release of a part of the ranch. *See* note 8, *supra*. Mr. Cisler's testimony simply did not address whether Plaintiff had suggested specific language to accomplish its purpose.

law is implied in all contracts. But even though this evidence raises equitable concerns, Plaintiff did not make any reference to this legal principle in the district court and has thus forfeited this issue. We therefore express no opinion on whether the evidence would have supported a finding of breach of that legally implied duty.[10]

### III

Finally, we consider Defendants' motion for attorney's fees as sanctions for the conduct of Plaintiff and its counsel in this appeal. As our discussion *supra* has shown quite clearly, counsel for Plaintiff has raised a number of issues that have no merit at all. Nevertheless, this is a matter committed to this court's discretion, and in our exercise of that discretion, we decline to award fees for this appeal.

### Conclusion

Accordingly, we AFFIRM the judgment for the Defendants.

Entered for the Court

William J. Holloway, Jr.
Circuit Judge

---

[10]If the issue had been raised at trial, the evidence might not have been entirely one-sided. Defendants might have countered by arguing that Plaintiff's intransigence in insisting on the "dollars-for-acres" method with its resulting effect on their security interest and Plaintiff's refusal to cooperate in obtaining appraisals also showed a lack of good faith.